D. T. O'BRIEN *v.* FRANK H. SEYER

BOGDANSKI, PETERS, ARMENTANO, SHEA and WRIGHT, Js.

Argued December 3, 1980—decision released February 17, 1981

*Philip S. Walker,* with whom, on the brief, was *Dean M. Cordiano,* for the appellant-appellee (plaintiff).

*David Goldstein,* with whom were *Richard A. Johnson* and *Keith A. Rubenstein,* for the appellee-appellant (defendant).

BOGDANSKI, J.   This is an action brought by the plaintiff attorney against the defendant, a former client, to recover the value of legal services rendered

by him during the period between November 1, 1969, and November 19, 1971, and expenses incurred as a result of such services, and interest. The jury rendered a verdict in favor of the plaintiff in the amount of $283,162.44. The defendant filed a motion for judgment in favor of the defendant notwithstanding the verdict, a motion to set aside the jury verdict and order a new trial, and a motion to discharge an attachment. The court denied the motion for judgment but ordered the verdict set aside unless the plaintiff filed a remittitur in the amount of $251,525.54 which would effectively reduce the verdict to $31,636.90. The court further ordered that the prejudgment attachment be reduced from $300,000 to $35,000 if the remittitur is not filed.

The plaintiff moved to stay the order reducing the prejudgment attachment until this court had determined his appeal. The trial court denied the motion. The plaintiff thereafter filed a motion for review with this court and on November 28, 1979, this court vacated the trial court's order denying the plaintiff's motion for stay of execution of the modification of the prejudgment attachment. Accordingly, the original prejudgment remedy continues in effect.

The legal problems for which the plaintiff's services were rendered grew out of certain corporate manipulations which took place in 1969. The management of Consumers National Life Insurance Company of Indiana (Consumers Life), in an attempt to stop the United Founders Life Insurance Company of Oklahoma (Founders Life) from gaining control of it, sold to the defendant and his associates 280,000 shares of its common stock for $3,640,000, payable $280,000 in cash and $3,360,000

by way of a promissory note. The 280,000 shares of the Consumers Life stock were then pledged to secure payment of the note. As a result, the defendant and his associates gained control of Consumers Life.

Thereafter, Founders Life instituted an action against the defendant and his associates to declare the sale of the stock void, and to enjoin them from voting said stock. The stockholders of Consumers Life also brought suit against the defendant and his associates to set aside the sale of the stock and to recover damages for alleged violations of security and fiduciary laws. Thus, the defendant and his group found themselves in the position of being subject to liability for the $3,360,000 note plus interest at a time when there was a substantial drop in the market price of the stock of Consumers Life.

The defendant and his group were initially represented by a Stamford, Connecticut, law firm. The defendant, however, became dissatisfied with the fees charged by that firm. He later met with the plaintiff in New York and, after some discussion, entered into an agreement whereby the plaintiff would represent the defendant in the matter of his involvement with Consumers Life. No specific fee for those services was discussed or agreed upon by the parties. Some time later, the plaintiff received a call from another member of the defendant's group, a Mr. Arbour, who also retained him for the same purpose.

The plaintiff was a member in good standing of the Connecticut bar, a graduate of Yale Law School and Harvard Business School and, at the time, was general counsel to a corporation located in New York City. He did not maintain an office in Connecti-

cut, except in his home. He had no office overhead and occasionally hired Yale law students to do his research.

The plaintiff performed his legal services over a period of approximately two years. They consisted of negotiating a settlement between the defendant and the stockholders of Consumers Life. This service required approximately 400 hours of the plaintiff's time, which included meetings in New York and Indiana. Local counsel in Indiana performed all the necessary legal services in court during the pendency of the litigation and in obtaining the court's approval of the settlement of the Founders Life suit and the Consumers Life stockholders suit, including the appeal to the United States Court of Appeals for the Seventh Circuit. The plaintiff testified before the District Court for Indiana and perfunctorily participated in the services rendered by Indiana counsel. Local counsel in Indiana rendered a bill in the amount of $18,000 for his services to both the defendant and Mr. Arbour and he was paid in full.

The settlement provided that the 280,000 shares of stock would be returned to Consumers Life, that the note of $3,360,000 would be cancelled, and that the litigation instituted by Founders Life and the stockholders of Consumers Life would be withdrawn. It also provided that Consumers Life would retain the $280,000 down payment. The settlement, however, did not affect the defendant and his associates' claim against Founders Life for an alleged breach of an agreement which was subsequently settled for $50,000. In sum, the settlement negotiated by the plaintiff eventually placed the defendant

and his associates in the position of losing $280,000 on the transaction less the net amount of $50,000 received by settlement from Founders Life.

On December 27, 1971, the plaintiff rendered to the defendant for his legal services the following bill in the amount of $1,128,432.44 for which he sought to charge the defendant one-half or the sum of $564,216.22:

"Fee for results achieved in the elimination of your liability to Consumers National Life Insurance Company calculated as follows:

| | |
|---|---:|
| Original note - 3/25/'69 | $ 3,360,000.00 |
| Interest at 6% from 3/25/'69 to 11/18/'71 (date of release of final instruments from escrow) | 534,240.00 |
| Total liability | 3,894,240.00 |
| Less: Possible recovery on a forced sale of 280,000 shares of letter stock at $.50 per share | 140,000.00 |
| Liability eliminated | 3,754,240.00 |
| Application of contingent fee factor of 30% to liability eliminated | 1,126,270.00 |
| Disbursements to 11/18/'71 | 2,162.44 |
| Total contingent fee and disbursements | 1,128,432.44 |
| Fifty percent of above total representing your share of the fee | $ 564,216.22 |

*****************

together with interest at the rate of 8% per annum from this date to date of final payment.

*****************

As set forth in my Memo of October 22, 1971, the following factors were considered carefully in arriving at this fee:

1. the amount involved and the final results achieved. viz. a reduction in total liability of $3,754,240.00;

2. the legal difficulty and complexity of the matter, viz. removing this note and all accrued interest from the books of a publically [sic] held and regulated insurance company;

3. the experience, judgment, responsibility and initiative involved in conceiving the legal strategy and in following thru to the final result;

4. the going legal rates for such responsibility;

5. the fact that the fee was contingent on results achieved and for this one matter as opposed to a fee certain regardless of results, for a continuing client."

The plaintiff sought to charge the other half of the bill to Mr. Arbour. Mr. Arbour settled with the plaintiff by agreeing to pay him $150,000 as follows: $50,000 in cash and a $100,000 note payable on demand. The defendant refused to pay the bill rendered to him and the plaintiff commenced this action.

The plaintiff, in paragraph two of his complaint, alleged a cause of action based upon a contingency fee contract. The trial court did not allow this claim to be submitted to the jury. The plaintiff does not contest this action.

The case was submitted to the jury on a quantum meruit basis. The plaintiff contends that the trial court improperly instructed the jury that the con-

tingent nature of the agreement should not be taken into consideration in determining a reasonable fee. The court, in its charge to the jury, stated: "Accordingly, the court as a matter of law instructs the jury that they are not to give any consideration to paragraph 2 of the complaint and not to take into consideration the allegations that the fee was contingent based upon results."

Generally, the contingent nature of a fee is a proper factor in the jury's determination of a reasonable attorneys' fee. 1 Speiser, Attorneys' Fees § 8:10. There are several general factors which may properly be considered in determining the amount to be allowed as reasonable compensation to an attorney. These factors are summarized in DR 2-106 of the Code of Professional Responsibility.[1] The fee arrangement here, however, was too indefinite to allow a contingency element to be considered by

---

[1] "[Code of Professional Responsibility] DR 2-106 FEES FOR LEGAL SERVICES.

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

the jury.[2] A contingent fee is one which will be paid to the attorney for his services only in case he wins; that is, a fee which is made to depend upon the success or failure to enforce a supposed right, and which is generally paid out of the recovery for the client. *Pocius* v. *Halvorsen,* 30 Ill. 2d 73, 78, 195 N.E.2d 137 (1963). The fee discussion between the plaintiff and the defendant did not indicate that the plaintiff had the risk of receiving no fee at all. We agree with the decision of the trial court in instructing the jury not to consider this factor.

The plaintiff also claims the court erred in granting the motion to set aside the verdict as excessive, and that this deprives him of his constitutional right to a trial by jury. The court noted that the services the plaintiff rendered for the defendant were performed competently and in a manner consistent with the best standards of the legal profession, but that they did not require an extraordinary degree of skill. It then concluded that the jury must have been influenced by mistake;

---

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge for, or collect a contingent fee for representing a defendant in a criminal case."

[2] "[Mr. O'Brien:] And then Mr. Seyer— We talked back and forth a little bit. And then Mr. Seyer said to me: You're not going to charge us if you take this on in the way Cummings and Lockwood charged— that's referring to the conversation the previous day at the Alrae Hotel. And, again, I said to him: 'No, that's not my method of charging at all; and I will charge you based upon the results achieved and what happens in the case.'

Q. As distinguished from what?

A. Well, as distinguished from the Cummings and Lockwood method."

that with all due deference to the constitutional right to a trial by jury, the award far exceeded the bounds of legitimate generosity; and that the award shocked the court's sense of justice and was excessive whether based upon 1970 standards or those of 1978.

The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence. Maltbie, Conn. App. Proc. § 181. Pursuant to this power, the trial court has the right and duty to set aside a verdict as being excessive or inadequate. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 78, 111 A.2d 547 (1955). When the amount of damages awarded is at issue, the relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake. *Sellner* v. *Beechwood Construction Co.,* 176 Conn. 432, 438, 407 A.2d 1026 (1979); *Thomas* v. *Katz,* 171 Conn. 412, 416, 370 A.2d 978 (1976); *Lee* v. *Lee,* 171 Conn. 1, 3, 368 A.2d 11 (1976); *Gorczyca* v. *New York, N.H. & H. R. Co.,* 141 Conn. 701, 703, 109 A.2d 589 (1954). The decision to set aside a verdict involves the exercise of a broad discretion in the trial court which, in the absence of a clear abuse, will not be disturbed and, in reviewing the exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness. *Jacobs* v. *Goodspeed,* 180 Conn. 415, 429 A.2d 915 (1980). In applying that standard of review to the facts at hand, we cannot find that the action of the court in setting aside the verdict as excessive constituted a clear abuse of discretion.

Lastly, the plaintiff challenges the trial court's action in modifying the prejudgment remedy by reducing it from $300,000 to $35,000. Extended discussion of this claim is not necessary. Since proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence; see *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation*, 172 Conn. 577, 584, 376 A.2d 60 (1977); the trial court's conclusion that there was not probable cause to sustain a prejudgment attachment in excess of $35,000 cannot be upheld.

On the cross appeal the defendant requests this court to address itself to an evidentiary ruling concerning the plaintiff's income from legal fees. The ruling involved the exclusion of the following question directed at the plaintiff: "From all sources, how much money did you earn and receive from the legal practice for the year 1971?" The trial court, while conceding that the plaintiff's standing at the bar was relevant, upon objection, ruled the question inadmissible based upon relevancy grounds. The trial court indicated that its exclusion was based upon the policy enunciated in *Booth, Lipton & Lipton* v. *Cassel*, 51 Misc. 2d 853, 274 N.Y.S.2d 90 (1966), aff'd, 27 App. Div. 2d 706, 278 N.Y.S.2d 178 (1967). That case held (p. 855) that "[a]n attorney's success in garnering large fees is not a true indication of his reputation or ability, generally, or in the specific area of practice concerned. This court need not close its eyes to the fact that some of the most able lawyers, of high repute, may be unable to demonstrate their collection of large fees, due solely to their type of practice. Many elements, not related to individual skills and talents, frequently enter into the earnings of

the lawyer." See 1 Speiser, Attorneys' Fees § 8.8. Doubtless there are dedicated attorneys who have great standing in the legal community but have limited incomes because they choose to practice public service law such as legal aid attorneys, state's attorneys, public defenders, consumer advocates and others in such fields which unfortunately do not command great remuneration. We are of the opinion, however, that total income from legal services is one factor out of many which is relevant to show an attorney's reputation. Accordingly, it was error to restrict cross-examination in this area.

The defendant contends that the trial court erred in charging the jury that it may consider the testimony of Attorney William Moller, who testified that the plaintiff's services were worth $750,000. The defendant argues that Moller expressly predicated his opinion solely on a contingent fee arrangement. A reading of the transcript shows that this was only one factor which Moller took into account, and that he based his opinion on all the factors outlined in the Code of Professional Responsibility. The jury properly considered his testimony.

Lastly, the defendant contends that the trial court erred in failing to direct a verdict for the defendant because there was a variance between the judgment and the pleadings and proof. This claim is without merit. A fair reading of paragraph one of the complaint alleges a cause of action based upon quantum meruit.[3] We reject a formalistic, highly technical

---

[3] The complaint stated in the first paragraph: "The plaintiff, being an attorney at law, rendered legal services on behalf of the defendant, at the request of the defendant, during the period beginning on or about November 1, 1969 and ending on or about November 19, 1971, under an implied agreement between the parties that the

view of pleading requirements. "Under modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action." *Schenck* v. *Pelkey*, 176 Conn. 245, 255, 405 A.2d 665 (1978).

In sum, while it is true that the trial court did not err in setting aside the jury award on the ground that it was excessive and was the product of mistake, it is also true that the jury's finding as to the defendant's liability for legal services rendered by the plaintiff remains undisturbed.

There is error in part, the judgment is affirmed except as to the modification of the prejudgment attachment, and the case is remanded for a new trial limited to the issue of damages only.

In this opinion the other judges concurred.

plaintiff should charge the defendant reasonable fees for the results achieved by the plaintiff on behalf of the defendant, and that the defendant would pay to the plaintiff the amount due on the plaintiff's account on the completion of said services and the achievement of said results."