[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Daniel Presnick, initiated this two count action against the defendant, Delton Bond, in order to collect attorney fees for legal services performed by the plaintiff in connection with the enforcement of the defendant's stipulated dissolution judgment. The plaintiff did not represent the defendant in the prior dissolution matter. The plaintiff's claims for recovery sound in breach of contract (first count) and quantum meruit (second count). CT Page 7246
The plaintiff alleges that, while he was an attorney duly licensed to practice law in Connecticut, he agreed to perform the legal services necessary to enforce the defendant's stipulated dissolution judgment, which provided the defendant with an option to purchase the defendant's former wife's interest in their jointly owned marital home. The defendant admits that after several hearings and memoranda of law, the defendant exercised his option to purchase the property. The plaintiff alleges that he billed the defendant for $6,802.81, but the defendant has refused and neglected to pay the same. The defendant admits that the plaintiff represented the defendant in the post-judgment matters, but denies that he owes the plaintiff the amount billed.
The defendant also asserted by way of special defenses that the plaintiff failed to exercise the ordinary care and skill in his representation of the defendant concerning the review of the post-judgment order (first special defense) and in his selection of an appraiser and review of the appraisal data (second special defense). The defendant alleges that this neglect and lack of skill constituted a material breach of the plaintiff's obligation to advise and represent the defendant. The defendant alleged by way of a third special defense that the plaintiff failed to properly credit certain payments made on the defendant's account. The defendant also asserted a three count counterclaim alleging, in the first count, that the plaintiff failed to exercise the ordinary care and skill in his representation of the defendant; and in the second and third counts, that the plaintiff's alleged overbilling constitutes a violation of CUTPA, General Statutes § 42-110b. Specifically, the defendant alleges in the second and third counts of the counterclaim that the plaintiff charged the defendant $300.00 for an appraisal, after the defendant had already paid the plaintiff $250.00 for the same appraisal fee (second count), and that the plaintiff overcharged the defendant in other various billing methods (third count).
The case was heard before the court on October 15, 1993. The court finds the following facts: In November, 1986, the defendant contacted the plaintiff seeking the plaintiff's assistance in enforcing the terms of the defendant's stipulated dissolution judgment. (Tr. I, 9-11.) The defendant informed the plaintiff that he had been contacted by his ex-wife regarding the purchase, but that he preferred to negotiate CT Page 7247 though counsel. (Tr. I, 35-37.)
In early 1987, the plaintiff unsuccessfully attempted to negotiate the sale price with the defendant's ex-wife, after which time he was contacted by the ex-wife's attorney. The plaintiff hired an appraiser who assessed the property's fair market value at $79,000, considerably less than the amount that the ex-wife's counsel had offered, $139,900. However, the defendant decided to proceed with the sale at his ex-wife's price. (Tr. I, p. 10-11.) The plaintiff referred the defendant to a Bridgeport attorney for the closing, although the property was located in Wolcott. The plaintiff testified that he performed certain functions for the closing, such as scheduling inspections. (Tr. I, p. 10-11.)
In the final bill, dated August 8, 1989, the plaintiff charged the defendant $937.50 (7.5 hours at $125.00 per hour) for these closing related services. However, the defendant's ex-wife failed to attend the first scheduled closing. (Tr. I, p. 11.) Following the aborted closing, the parties agreed that the defendant would have to proceed with a contempt citation in order to enforce the defendant's option to purchase the property.
The plaintiff attended a July 11, 1988, hearing on behalf of the defendant, at which point the plaintiff refused the ex-wife's second offer of $144,900, which the plaintiff refused on the basis of the earlier, January, 1987, appraisal. (Tr. I, p. 19; Tr. II, p. 6-7.) After a second hearing on November 11, 1988, the court determined the fair market value of the property at $152,000, $20,000 more than the ex-wife's original offer. (Tr. I, 19.) The defendant eventually purchased the home at that amount, and the Bridgeport attorney performed the closing and charged the defendant for the closing. (Tr. I, p. 63.)
There was no written fee arrangement, and the parties did not agree on a set amount for the services, nor did the plaintiff inform the defendant of the amount of time he estimated it would take to achieve the objective of the representation, nor what the ultimate price for the representation would be. (Tr. I, pp. 57-58.) The defendant regularly contacted the plaintiff during the course of the negotiations for the closing and the hearings for the appraisal, and the defendant knew that the plaintiff was actively performing services for him in connection with the representation. The CT Page 7248 defendant had informed the plaintiff on several occasions that he had limited funds, and requested that the plaintiff proceed diligently in order to keep the expenses down. (Tr. I, pp. 64-65.) Although the plaintiff had presented the defendant with a bill following the first hearing, the defendant contested the amount of the time charged, the amount of the bill, and the charge for travel time. (Tr. I, p. 64.)
There was no agreement for travel charges. In November of 1986, the defendant made a payment of $500.00.[1] (Tr. I, p. 42; Tr. II, p. 18; Defendant's Exhibit A.) In August of 1988, the defendant also made a payment to the plaintiff of $1,500.00. (Tr. I, p. 12-13.) The plaintiff's final bill was delivered on December 4, 1988, in the amount of $8,302.81, less the $1,500.00 payment. The defendant was not credited for the $500.00 payment.
The court finds that the plaintiff and the defendant did have an agreement that the plaintiff would perform legal services for the defendant concerning the enforcement of the defendant's stipulated dissolution judgment, although the parties did not agree on a set amount of compensation. Also, the court finds that the plaintiff performed the services for the defendant.
"If the amount of the fee was not controlled by contract, the appellant was only entitled to receive fair and reasonable compensation." Appeal of Ennis, 84 Conn. 610, 612, 80 A. 772
(1911); see also Rules of Professional Conduct, Rule 1.5 ("RPC") ("A lawyer's fee shall be reasonable."). "There are several factors which may properly be considered in determining the amount to be allowed as reasonable compensation to an attorney. These factors are summarized in DR 2-106 of the Code of Professional Responsibility, [now replaced by the Rule 1.5 of the RPC]." O'Brien v. Sayer, 183 Conn. 199, 206, 439 A.2d 292
(1981). In determining the reasonable fee for an attorney's services, it is appropriate to take into account such factors as the time expended, the lawyer's skill and standing, and the extent to which the lawyer's efforts advanced the case, in addition to those factors enumerated in the RPC, Rule 1.5.Silver, P.C. v. Jacobs, 9 Conn. L. Rptr. 358, 360 (August 9, 1993, Hodgson, J.). In addition, the RPC, Rule 1.5, dictates that
[t]he factors to be considered in determining the CT Page 7249 reasonableness of a fee include the following:
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
 (5) The time limitations imposed by the client or by the circumstances;
 (6) The nature and length of the professional relationship with the client;
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
In determining what a reasonable fee is, the court has authority to reduce the amount of fee charged in accordance to what the trier of fact determines is a reasonable fee. Beckmanv. Gwiazda, 4 Conn. L. Rptr. 740, 743 (July 31, 1991, Allen, S.J.) (court determined that the fee charged by the attorney was unreasonable under RPC 1.5, due to attorney's minimal and inadequate services and ordered fee returned).
The court finds that there was no agreement to pay travel time, and that the plaintiff failed to counsel the defendant that he would be charged for such fees.[2] It was unreasonable for the plaintiff to charge the defendant travel time without first counselling the client as to the extent or necessity of such fees, considering the fact that the defendant had informed the plaintiff that he was concerned with keeping his expenses down and that the plaintiff knew that any contempt hearings on the dissolution decree would have to be heard in Waterbury. Accordingly, the court finds that the plaintiff's bill should be reduced by the amount of travel time charged, 3.1 hours at CT Page 7250 $125.00 per hour, or $387.50.
Also, the portion of the plaintiff's original fee for assisting the closing attorney and setting up the closing is found to be unreasonable. The court finds that this portion of the fee charged in the original bill, $937.50, for 7.5 hours at $125.00 per hour, for services that were primarily clerical in nature, such as scheduling inspections, is unreasonable, based on the nature of the services performed and the reasonable amount of time necessary to perform such services. The court finds that the reasonable fee for the services performed in connection with the closing, considering the nature of the service performed, should be $150.00.
In addition, the court finds that the total amount of the plaintiff's bill is unreasonable, based on the following factors: The nature and complexity of the work involved, the results achieved and the length of time to achieve the results. The court finds that nature of the matter was not so complex as to require a fee of $8,302.81, considering that the dissolution judgment mandated that the defendant's ex-wife must sell the property, and all that was necessary was a determination of fair market value. In addition, the final sale price which was achieved by the defendant's efforts, $152,000.00, was $13,000.00 more than the defendant's ex-wife's original asking price for the property. This was due to the fact that the plaintiff's lack of diligence in moving forward with the matter in a volatile, rising, real estate market.[3] It took almost two years for the plaintiff to effectuate the sale. It took two hearings to determine the property's fair market value because the plaintiff did not order a current appraisal of the property for the November 7, 1988 hearing, but instead relied on the January, 1987 appraisal value for the hearing. In addition, the plaintiff's referral of the defendant to a Bridgeport attorney for a closing on a property in Wolcott was not in the defendant's best interests, due to the geographical restraints that this referral imposed on the defendant's ex-wife, who had failed to attend the first closing. Essentially, the plaintiff charged a premium fee for minimum services. Accordingly, after hearing the evidence and considering the services performed and the results achieved by the plaintiff, the court finds that the reasonable fee for all of the services performed should be $4,812.50, and the defendant should be credited in the amount of $2,000.00 to reflect payments made, leaving a balance of $2,812.50, plus disbursements of $350.00 for a total plaintiff's CT Page 7251 judgment of $3,162.50. The court has made these calculations by allowing 38.50 of the plaintiff's claimed hours and multiplied that by the hourly rate of $125.00, which the court finds to be reasonable under the circumstances considered herein.
The court finds that the defendant failed to sustain his burden of proof with regard to his counterclaim and the first and second special defenses. "`It is well established that the party who initiates an action and who seeks a judgment in his favor must prove that which he alleges in order to prevail.' SeeNikitiuk v. Pishtley, 153 Conn. 545, 552-53, 219 A.2d 225 (1966) . . . Whether the plaintiff sustained his burden of proof is a question of fact for the trier.'" (Additional citations omitted.) Presnick v. DeRosa, 12 Conn. App. 554, 557,532 A.2d 1309 (1987).
Although the defendant did attempt to call an attorney as a witness, presumably in order to obtain testimony regarding the plaintiff's level of care and the reasonable amount of time necessary to perform the services charged by the plaintiff, the defendant's witness never appeared. The defendant never offered any evidence that the plaintiff's representation fell below the standard of ordinary care and competence.
 Although the opinion of an expert is not essential on the issue of whether the fees were reasonable . . . competence of counsel is best challenged through expert testimony. As a general rule, "where the exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery." Bent v. Green, 39 Conn. Sup. 416, 420 (1983). Cf. Grody v. Talin, 170 Conn. 443, 448-449 (1976); Levett v. Etkind, 158 Conn. 567, 574 (1969); Snyder v. Pantaleo, 143 Conn. 290, 294-295 (1956). Only where assertions of incompetence are so gross that the neglect would be clear to a layperson, can the client claim the benefit of the exception of the general rule cited in Bent.
Goldstein Peck, P. C. v. Cooper, supra, 6 Conn. L. Rptr. 772
n. 4. In the present case, the defendant failed to offer any evidence regarding the competence of the plaintiff.
With respect to the CUTPA violations based on charges for services not performed, no evidence was offered indicating that CT Page 7252 the plaintiff did not perform the service charged, although, as noted above, the fee charged for the services was unreasonable. Regarding the allegations concerning the $250.00 appraisal fee that was allegedly paid by the defendant to the appraiser, no evidence was offered showing that such a payment was made. Accordingly, the defendant failed to sustain his burden of proof on the special defenses and counterclaims, and judgment is entered for the plaintiff on the counterclaims.
/s/ Sylvester, J. SYLVESTER, J.