[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO SET ASIDE THEVERDICT OR FOR JUDGMENT NOTWITHSTANDING THE VERDICT
After oral argument on the defendants' motion to set aside the verdict or for judgment notwithstanding the verdict, the court denied the defendants' motion on all grounds claimed by the defendants, except for the defendants' claim that the verdict was excessive.
The jury returned a verdict for the plaintiff in the total amount of $1,901,828.08, including $300,000 for aggravation of the plaintiff's preexisting condition of ataxia, $1,500,000 for infliction of emotional distress, $24,654.44 for the expenses of litigation incurred by the plaintiff in the underlying arbitration action and common law punitive damages of $77,173.64 for the reasonable attorney's fees and expenses of litigation incurred by the plaintiff in this action.
The court instructed the jury to reconsider its award of CT Page 13497 $300,000 for aggravation of the plaintiff's preexisting condition of ataxia and its award of $1,500,000 for infliction of emotional stress included in the verdict. The jury reduced its award for aggravation of ataxia to $200,000, and for emotional distress to $800,000, which resulted in a verdict in the total amount of $1,101,828.08. The court instructed the jury to reconsider such awards a second time, but the jury declined to do so.
Because of a prior default entered against the defendants, the jury was instructed that the plaintiff's allegations as to liability of the defendants for the plaintiff's claims of bad faith under the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act, reckless and wilful misconduct and breach of contract were to be taken as true, including the following. In July and August, 1989, the plaintiff demanded of the defendants that the defendants proceed with arbitration of the plaintiff's claim for underinsured motorist insurance coverage. On August 20, 1990, the plaintiff offered to settle his claim with the defendants for the $200,000 policy limit of the underinsured motorist insurance policy. The defendants refused to pay the plaintiff such sum, although the reasonable value of the plaintiff's losses far exceeded that amount.
The defendants failed to proceed with arbitration of the plaintiff's claim for underinsured motorist insurance coverage until ordered to do so by the court on or about September 23, 1991. On or about December 5, 1991, the arbitration commenced and continued thereafter until September 30, 1992, due to unnecessary delays and objections by the defendants. On or about December 5, 1991, the plaintiff offered to settle his uninsured motorist insurance claim for $150,000 to avoid further rigors, stress and health risks he faced associated with extended contested arbitration hearings, but the defendants refused to do so.
For a period of over three years before and throughout the arbitration process, the plaintiff repeatedly requested that his claim be diligently and promptly processed but the defendants continually refused. During such period the defendant conducted surveillance of the plaintiff and harassed his neighbors and friends. During the period of the arbitration process, the defendants made false and misleading statements to others about the plaintiff's character and integrity and released to others without authority copies of privileged medical, psychological and psychiatric reports concerning the plaintiff. CT Page 13498
After arbitration, the arbitrators awarded the plaintiff the policy limit of $200,000 against the defendant AIU Insurance Company and on October 20, 1992 payment was made.
With reference to the plaintiff's claim of aggravation of a preexisting condition of ataxia resulting from the defendants' actions, the jury could have reasonably found the following facts. The plaintiff was forty-eight years old at the time of the trial. As a result of a head injury which the plaintiff sustained when he was seventeen years old, the plaintiff was mentally impaired from a condition of ataxia. Initially the plaintiff's motor functions were almost nonexistent, he had problems with walking, talking and eating and was pretty much bedridden. Subsequently, with medication, the ataxia was held in check and the plaintiff was able to function.
During the period from December 5, 1991 to September 30, 1992, when the parties were involved in three arbitration hearings, the plaintiff's ataxia condition regressed and became more severe and his mental and physical capabilities were affected. The plaintiff's vision blurred, his head shook uncontrollably, his arms twitched and his knees moved. The plaintiff's speech, eating, walking, sitting and driving were adversely affected by shaking. The plaintiff saw the physician treating him on his usual schedule and took his regular medication for ataxia during this period. After the completion of the arbitration hearings, the ataxia became a lot better.
With reference to the plaintiff's claim for infliction of emotional distress resulting from the defendants' actions, the jury could have reasonably found the following facts. During the period when the plaintiff's claim for underinsured motorist insurance was being processed, the plaintiff became depressed and very paranoid. He thought people were following him and watching him and he did not want to leave his home. He became untrusting of people.
On one occasion the plaintiff overreacted and became very upset when he had a minor motor vehicle accident and caused a little scratch on the bumper of a motor vehicle owned by a friend. On another occasion, subsequent to an arbitration hearing, the plaintiff did not enter his car, but walked and ended up on a bridge over a highway and pondered jumping from the bridge. He subsequently telephoned a friend who took him home, CT Page 13499 but did not go to the hospital.
The plaintiff did not consult a physician for his emotional distress nor did he take any medication for it. The plaintiff continues to be distrusting of people.
"The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence. . . . Pursuant to this power, the trial court has the right and duty to set aside a verdict as being excessive or inadequate." O'Brien v. Seyer, 183 Conn. 199, 208
(1981). The jury award should be sustained so long as it does not shock the sense of justice. Herb v. Kerr,1990 Conn. 136, 139 (1983).
In determining whether to order a remittitur, the court must determine whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.Wood v. Bridgeport, 216 Conn. 604, 611 (1990).
In the present case, because of the extreme nature of the aggravation of the plaintiff's preexisting condition of ataxia and the debilitating effect of the aggravation on the plaintiff during the limited period of the aggravation, the court finds that the jury's award of $200,000 for aggravation of ataxia does not shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.
The jury's award of $800,000 for infliction of emotional distress, however, does shock the court's sense of justice. Although the plaintiff suffered depression and paranoia during the course of the arbitration process, the specific instances of substantial emotional distress testified to by the plaintiff's witnesses were limited to one overreaction to a minor motor vehicle accident and one incident of suicidal thoughts. The only continuing effect of the emotional distress is that the plaintiff is more distrustful of people than prior to the arbitration process, which impacts on the plaintiff because of his dependence on others due to his condition of ataxia.
The court, therefore, finds that the jury's award of $800,000 CT Page 13500 for infliction of emotional distress falls outside the limits of fair and reasonable compensation and so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice or mistake as to the award. The court finds that $250,000 is a reasonable award for infliction of emotional distress.
Accordingly, the verdict is set aside and a new trial is ordered unless the plaintiff within ten days from the date hereof shall file with the clerk a remittitur of $550,000 to the amount of the verdict, but if such remittitur is so filed, then the plaintiff shall recover of the defendant $551,828.08 plus punitive damages.
Hendel, J.