******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WIFILAND, LLP *v.* MARY HUDSON ET AL.
(AC 34977)
(AC 36100)

Keller, Prescott and Sullivan, Js.

*Argued May 27—officially released September 23, 2014*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Genuario, J.)

*Christopher G. Winans*, for the appellant-appellee
(plaintiff).

*David P. Burke*, for the appellees-appellants
(defendants).

*Opinion*

PRESCOTT, J. This consolidated appeal arises from a breach of contract action brought by the plaintiff, WiFiLand, LLP, against the defendants Mary Hudson, George Hudson, and St. Louis RV Park.[1] The plaintiff appeals, and the defendants cross appeal, from the judgment rendered after a trial to the court in favor of the plaintiff and awarding it $1 in nominal damages, and from the court's subsequent order awarding the plaintiff $5000 in attorney's fees. The defendants also appeal from the court's judgment denying their motion to enforce a postjudgment settlement agreement. As to the judgment on the complaint and the subsequent award of attorney's fees, the defendants claim that the court improperly found that the defendants breached the parties' agreement;[2] and the plaintiff claims that the court improperly (1) failed to consider the parties' stipulation regarding damages and (2) awarded only $5000 in attorney's fees.[3] The defendants additionally claim that the court failed to find that there was an enforceable postjudgment settlement agreement. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff provides wireless internet services to recreational vehicle (RV) parks and campgrounds throughout the United States. The defendants operate an RV park in St. Louis, Missouri, where RV owners can rent space on a daily, weekly, or monthly basis. In March, 2010, the parties entered into a "license agreement" (agreement), in which the plaintiff agreed to install various equipment on the defendants' property, as well as provide wireless internet services to the defendants' RV park so that its customers could purchase internet access during their stay.

The plaintiff arranged for a third party technician, Terry Mitchell, to install the plaintiff's equipment on the defendants' premises, and the defendants were satisfied with the plaintiff's services until late April, 2010. Between late April and June, 2010, during the defendants' busy season, several of the defendants' guests experienced trouble accessing and using the internet, and communicated their dissatisfaction to both the defendants and the plaintiff. In late June, 2010, the system stopped working altogether for a short period of time.

Internet service subsequently was restored, but a variety of issues continued to exist. On several instances thereafter, the defendants informed the plaintiff that their customers were not satisfied with the quality of the internet service provided. The defendants made various good faith efforts to attempt to improve the internet service at the park, but, notwithstanding those efforts and multiple communications between the

plaintiff and the defendants, the defendants were never satisfied with the quality of the internet service.

In late October, 2010, there was another more extended internet outage. At the plaintiff's request, Mitchell returned to the defendants' facility to investigate the issue. After investigating, Mitchell communicated to the defendants that there was nothing he could do to get the system to operate correctly.

On or about November 26, 2010, Mary Hudson, on behalf of the defendants, sent a letter to the plaintiff stating: "Be advised that there is no contract nor was one executed. You have ten days to remove your equipment."[4] In response, on December 7, 2010, the plaintiff sent a second letter to the defendants notifying them that it considered the defendants to be in material breach of the agreement, for, among other things, terminating the agreement without providing proper adequate notice and an opportunity to cure the alleged breach.

The plaintiff initiated this action and filed a one count complaint dated January 18, 2011, alleging breach of contract. The action subsequently was tried to the court, *Genuario, J.* In its May 7, 2012 memorandum of decision, the court concluded that the defendants had breached the agreement by "insisting [that] the plaintiff remove its equipment without providing the plaintiff with the [forty-five] day period in which to cure any failure on the part of the plaintiff to comply with the material provisions of the agreement." The court also found that the plaintiff had failed to prove actual damages or that it was entitled to liquidated damages pursuant to the liquidated damages clause of the agreement. Accordingly, the court ordered the defendants to pay $1 in nominal damages.

The plaintiff then filed a motion for attorney's fees on May 17, 2012, requesting the court to order the defendants to pay more than $50,000 in attorney's fees. The court scheduled this motion for an evidentiary hearing several times, but, after several continuances, the parties consented to the court deciding the issue on the basis of the affidavits, exhibits and memoranda on file.

On May 29, 2012, before the court decided the motion for attorney's fees, the plaintiff filed a motion to reargue and for reconsideration of the underlying claim, seeking both the right to reargue and the opportunity to offer further evidence on damages. In its motion to reargue, the plaintiff contended that the court should have awarded it $23,281.08 in damages because, according to the plaintiff, the defendants had stipulated at trial as to this amount of damages. The court granted the motion to reargue and held a hearing on July 9, 2012. After hearing argument from all parties, the court affirmed its prior decision ordering the defendants to pay $1 in nominal damages.

On August 21, 2012, the plaintiff filed this appeal, challenging the award of only nominal damages, and, on September 10, 2012, the defendants cross-appealed, challenging the court's finding that they breached the agreement.

On May 6, 2013, the court granted the plaintiff's motion for attorney's fees and ordered the defendants to pay $5000. The parties then amended their appeal and cross appeal to challenge the award of attorney's fees.

While those appeals were pending, the parties entered into settlement negotiations. On July 19, 2013, the defendants filed a motion to enforce an alleged agreement between the parties to settle the underlying breach of contract case, the plaintiff's appeal and the defendants' cross appeal. On September 9, 2013, the court held an evidentiary hearing on that matter, and, thereafter, denied the defendants' motion to enforce the alleged settlement agreement. The defendants filed a timely appeal from that ruling on September 26, 2013, and, on October 22, 2013, the defendants moved to consolidate that appeal with the earlier amended appeal and amended cross appeal relating to the court's original judgment and award of attorney's fees. This court granted the defendants' motion to consolidate on October 28, 2013. Additional facts will be set forth as necessary.

I

We first address the defendants' claim that the court improperly found that they had breached the parties' agreement by terminating it without providing the plaintiff with forty-five days written notice and an opportunity to cure the alleged breach. The defendants argue that because they terminated the agreement solely on the basis of the internet system's failure to function and provide internet service for their customers properly, rather than on any claimed breach of the agreement by the plaintiff, no forty-five day notice and opportunity to cure was required. We conclude that the court's finding that the defendants breached the agreement was not clearly erroneous.

"Ordinarily, the determination of whether a contract has been materially breached is a question of fact, subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 59–60, 829 A.2d 102 (2003).

In the present matter, paragraph twelve of the agreement, titled "Default," provides in relevant part: "(a) In the event of [the plaintiff's] default in compliance

with any material provision of this [agreement], [the defendants] may, at [their] option, *upon* [*forty-five*] *days written notice*, terminate this [agreement]. . . . (c) In the event of [plaintiff's] failure to comply with any material provision of this [agreement], which failure is not cured within forty-five . . . days after receipt of written notice thereof from [the defendants] . . . [the defendants] may, at [their] option, terminate this [agreement]." (Emphasis added.) Accordingly, pursuant to the clear and unambiguous terms of the agreement, before the defendants could terminate the parties' agreement on the basis of a failure to receive any agreed upon services pursuant to a material provision of the agreement, the defendants were required to give the plaintiff forty-five days written notice and an opportunity to cure the service issues.

The defendants do not claim that the language of paragraph twelve is ambiguous or that the court misinterpreted that provision in ruling in favor of the plaintiff. They also do not claim that the November 26, 2010 letter, which requested that the plaintiff remove its equipment, thereby terminating services, substantially complied with the notice and cure provisions of paragraph twelve. Rather, the defendants argue that paragraph twelve was inapplicable because they were not terminating the agreement due to a breach and their letter did not expressly state that the plaintiff was in material breach of the agreement. Alternatively, even if applicable, the defendants argue that they were excused from complying with the notice and cure provisions of paragraph twelve because doing so under the circumstances would have been futile.

The defendants' first argument lacks merit. The November 26, 2010 letter consisted of two sentences: "Be advised that there is no contract nor was one executed. You have ten days to remove your equipment." In considering the defendants' intent in sending the November 26, 2010 letter, the court took into account Mary Hudson's trial testimony that the first statement was a mistake and that the defendants in fact understood that their agreement with the plaintiff remained in effect, but that they wanted to terminate that agreement because of the poor quality of the internet service being provided. Thus, the defendants sought to terminate the agreement on the basis of the plaintiff's failure to provide the quality of internet service agreed upon. The defendants certainly were entitled to terminate the agreement on that basis provided that they also complied with paragraph twelve's notice requirement and the plaintiff failed to remedy the situation within forty-five days of receiving the written notice of termination. Nothing in paragraph twelve required the defendants to expressly state in their notice letter that they sought to terminate the agreement on the basis of a material breach by the plaintiff, and, thus, their decision to avoid stating such did not excuse their obligation to comply

with the notice provision.

As for the defendants' second argument—that giving the requisite notice would have been futile and "[t]he law does not require the performance of a futile act"; *Luttinger* v. *Rosen*, 164 Conn. 45, 47, 316 A.2d 757 (1972); the court disagreed, and found on the basis of the evidence presented that proper notice would not necessarily have been futile. The defendants have failed to persuade us that the court's finding was clearly erroneous.

With respect to the defendants' futility claim, the court found: "The evidence indicates that the system was operational at least to some extent and that the reasons for the lack of satisfaction of many of the customers had never been determined. A [forty-five] day cure period might well have resulted in more effort on the part of the plaintiff to finally address and resolve the issue. While the evidence certainly reveals growing dissatisfaction with the system on the part of the defendants, and a growing dissatisfaction, and perhaps even condescension, on the part of the plaintiff with the defendants, the evidence also reveals that, prior to the November [26, 2010] notice sent by the defendants, the parties did respond to each other's communications." Because there is ample evidence in the record that supports the subordinate facts upon which the court based its decision, and because we are not left with a "definite and firm conviction" that the court committed an error in this case; *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 79 Conn. App. 559–60; we conclude that the court's finding regarding futility was not clearly erroneous. In sum, we reject the defendants' claim that the court improperly found that they had breached the parties' agreement.

## II

We turn next to the plaintiff's claim that, in awarding only nominal damages, the court improperly failed to consider the parties' alleged stipulation regarding damages. The plaintiff argues that the parties stipulated on the record that the gross revenue the plaintiff would have collected over the remainder of the agreement would have been $23,281.08, and that that amount would be the appropriate amount of damages, pursuant to the agreement's liquidated damages clause, if the plaintiff prevailed on its claim of breach of contract. The plaintiff, therefore, argues that the court's decision awarding the plaintiff only nominal damages is inconsistent with the stipulation between the parties, and, thus, should be reversed. We disagree.

The following facts are necessary for our resolution of this claim. In its case-in-chief, the plaintiff called John Borg, its managing partner, to discuss, inter alia, the average gross monthly revenue the plaintiff made during the six months that the plaintiff's equipment was

installed at the defendants' facility. To support Borg's testimony, the plaintiff entered into evidence a document prepared for use at trial detailing the plaintiff's calculation of the average gross monthly revenue over the six months preceding the termination of the agreement and its calculation of the damages due under the agreement based on that figure.

During Borg's testimony on the figures and calculations, the following exchange occurred between the court and counsel for the defendants:

"[The Defendants' Counsel]: Your Honor, just to save the court time, I'm going to stipulate to all of this. I'm still going to object to the exhibit.

"The Court: I understand.

"[The Defendants' Counsel]: But I will stipulate to all the mathematical computations. I will agree that if the mathematical computations were correct, the number would [be] $23,281.08. Are you going to offer it now?

"[The Plaintiff's Counsel]: Thank you . . . .

"[The Defendants' Counsel]: Okay, stipulating.

"The Court: Seventy-six months, and it's 23,000?

"[The Defendants' Counsel]: [$23,281.08] would be the damages per the contract based on this exhibit. Now I'm going to object to this exhibit."

Following the conclusion of evidence on the second day of trial, the court, sua sponte, noted that a term seemed to be missing in the liquidated damages clause of the agreement. The clause provided: "Upon termination by [the plaintiff] for [c]ause pursuant to this section, [plaintiff] shall be entitled to elect, in lieu of money damages, an award of liquidated damages in the lesser amount of [f]ifty [t]housand [d]ollars ($50,000.00) or the amount of *average monthly* during the six-month period preceding the termination realized by [the plaintiff] for the provision of [c]ommunications [s]ervices multiplied by the number of months remaining in the then-current term for each such breach or violation." (Emphasis added.) The court found that there was a missing term between the words "monthly" and "during."

In its brief submitted after trial, the plaintiff argued that the missing term was gross revenues. The defendants, however, argued that the clause lacked a material term, which made it ambiguous, and, therefore, it should not be applied. In any event, the court reasoned in its memorandum of decision that the clause should be construed against the plaintiff as the party who drafted the contract. See *Sturman* v. *Socha*, 191 Conn. 1, 9, 463 A.2d 527 (1983) ("[i]t is generally accepted . . . that when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it . . . and, like-

wise, the language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted" [citation omitted]).

The court found that the plaintiff drafted the agreement and that its construction would "tend to award the plaintiff damages in excess of the profit it would have realized in absence of a breach." In light of those findings, the court determined that the plaintiff's interpretation of the agreement was not equitable or fair, and concluded that the plaintiff did not prove that it was entitled to receive damages under the liquidated damages clause. Additionally, the court concluded that the plaintiff also failed to prove actual damages and, thus, awarded the plaintiff nominal damages of $1.

At the hearing on the motion to reargue, the plaintiff argued that the parties had stipulated that the damages under the agreement would be the average monthly gross revenue, which equaled $23,281.08. The court concluded that "the stipulation was to the mathematical calculations set forth in a contested exhibit and nothing else." We now turn to the plaintiff's claim.

We begin our discussion of the plaintiff's claim with our well established standard of review. "[A] stipulation of the parties is to be regarded and construed as a contract. . . . In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . We review the court's determination of the parties' intent, when the language of the stipulation is ambiguous, as we would review a factual conclusion. . . . We will uphold the court's factual findings unless those findings are clearly erroneous. . . .

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Mariculture Products Ltd.* v. *Certain Underwriters at Lloyd's of London*, 110 Conn. App. 668, 675, 955 A.2d 1206 (2008).

After reviewing the record, we conclude that the court's finding that the parties' stipulation was limited only "to the mathematical calculations set forth in a contested exhibit" is not clearly erroneous. As the record plainly reflects, counsel for the defendants specifically stated that he only agreed to "all the mathematical computations," and that "[$23,281.08] would be the damages per the contract *based on this exhibit*." (Emphasis added.) This stipulation must be read in context with counsel's repeated objection to the admissibility of the exhibit as a whole. Under these circumstances, the statement of the counsel for the defendants agreeing to the accuracy of the calculations in the

exhibit cannot be fairly construed to mean that the defendants were conceding that the exhibit was admissible or that the figure in the exhibit established the proper amount of damages under the liquidated damages clause. For these reasons, we cannot conclude that the court's finding regarding the extent of the parties' stipulation is clearly erroneous. The plaintiff's claim, therefore, fails.

## III

The plaintiff also claims that the court abused its discretion by awarding only $5000 in attorney's fees. The plaintiff argues that the agreement provided that the prevailing party in a breach of contract action is entitled to recover reasonable attorney's fees and costs, that it was the prevailing party, and that the evidence submitted demonstrated that the plaintiff's legal bills totaled more than $50,000. More specifically, the plaintiff argues that the court improperly considered the conduct of the parties and the history of the proceedings to determine whether the amount of attorney's fees requested by the plaintiff was reasonable. Accordingly, the plaintiff argues that the court abused its discretion and requests that we reverse the court's order, and remand the case for a proper calculation of attorney's fees. We disagree.

The following additional facts are necessary for our review of this claim. In its May 6, 2013 order granting the plaintiff an award of attorney's fees, the court noted that it "considered the nature of the litigation . . . the conduct of the parties . . . the history of the proceedings . . . the hourly rates charged by the plaintiff's counsel and the amount of hours billed, and the results obtained." The court then found that this case was "a one count breach of contract claim" and that "both parties share[d] responsibility for the failure of the contractual relationship." The court also found that "prior claims of the plaintiff far exceed[ed] any reasonable expectations or basis" and that the plaintiff "fail[ed] to follow its own contractual provision requiring good faith efforts at resolution as a precondition to litigation." In light of those findings, the court awarded the plaintiff $5000 in attorney's fees.

"Our standard of review of the plaintiff's claim is well defined. An award of attorney's fees is not a matter of right. Whether any award is to be made and *the amount thereof* lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in the best position to evaluate the circumstances of each case,

we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citations omitted; emphasis added; internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 63–64, 762 A.2d 508 (2000).

With respect to the relevant legal principles, we have often explained that Connecticut adheres to the "American rule" regarding attorney's fees. *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services*, LLC, 308 Conn. 312, 326, 63 A.3d 896 (2013). "Under the American rule, in the absence of statutory or contractual authority to the contrary, a successful party is not entitled to recover attorney's fees or other ordinary expenses and burdens of litigation . . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Citations omitted; internal quotation marks omitted.) Id., 326–27. Paragraph twenty-seven of the agreement, entitled "Disputes; Rights and Remedies; Attorneys Fees" provides in relevant part, "The prevailing party in any lawsuit or action based on this [a]greement shall, in addition to any other relief granted therein, be entitled to its reasonable attorney['s] fees and costs."

If a contractual provision allows for reasonable attorney's fees, "[t]here are several general factors which may properly be considered in determining the amount to be allowed as reasonable compensation to an attorney. These factors are summarized in [rule 1.5 (a) of the Rules of Professional Conduct]." *O'Brien* v. *Seyer*, 183 Conn. 199, 206, 439 A.2d 292 (1981); see also *Crest Plumbing & Heating Co.* v. *DiLoreto*, 12 Conn. App. 468, 480, 531 A.2d 177 (1987). These factors include: the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client; the experience, reputation and ability of the lawyer or lawyers performing the services, and whether the fee is fixed or contingent. Rules of Professional Conduct 1.5 (a).

The commentary to rule 1.5 provides that the factors specified in the rule, however, are not exclusive. "[W]e have explained previously courts . . . may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." (Internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, supra, 308 Conn. 327.

In the present case, the court considered the nature of the litigation, the conduct of the parties, the history

of the proceedings, the hourly rates charged by the plaintiff's counsel and the amount of hours billed, and the results obtained. Although the plaintiff asserts that the court is not legally authorized to rely on certain of those factors, the plaintiff has not cited, nor have we found, any authority that suggests that the court's consideration of any of these factors is not permitted. To the contrary, we conclude that the factors directly relate to the question of what is a "reasonable" attorney's fee award under the agreement and the circumstances of this case.

As the trial court recognized, although the plaintiff technically prevailed on its breach of contract claim, its victory was essentially Pyrrhic. Additionally, given the simplicity of the legal claims, the shared fault in the breakdown of the contractual relationship and the plaintiff's failure to adhere to the agreement's provision requiring prelitigation dispute resolution, we cannot conclude that the court abused its discretion in awarding the plaintiff only minimal attorney's fees. Accordingly, the plaintiff's claim fails.

IV

Finally, we address the defendants' claim that the court erred by denying their motion to enforce a settlement agreement. The defendants argue that the court improperly concluded, following an evidentiary hearing held pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993), that the settlement agreement was not enforceable. We disagree.

The following facts are relevant to this appeal. During the pendency of the appeal and cross appeal, the parties engaged in settlement discussions. In response to an offer from the defendants, plaintiff's counsel sent the following correspondence, which provided in relevant part: "[The plaintiff] has agreed to accept the offer to resolve the pending. . . actions for [an undisclosed dollar amount][5] subject to the following: [the plaintiff] requires a confidentiality agreement—drafted by [the defendants]—regarding the settlement. The agreement will bind [defense counsel and the defendants]." (Footnote added.)

On June 3, 2013, the defendants sent the plaintiff a draft settlement agreement that included a confidentiality provision for its review. On June 4, 2013, the plaintiff responded that it no longer wished "to pursue the settlement of this matter at the [undisclosed dollar amount]."

The defendants filed a motion to enforce the settlement agreement on July 19, 2013. The defendants claimed that, subsequent to sending the plaintiff the settlement agreement with the proposed confidentiality provision, but prior to the plaintiff's June 4, 2013 correspondence, both parties received a letter from the plaintiff's former counsel claiming a "charging lien on any

counsel fees and other funds payable to the [plaintiff]" as a result of the present case. The defendants argued that it was the notice of the lien, rather than any real objection to the draft of the proposed confidentiality provision, that caused the plaintiff to unreasonably refuse to accept the confidentiality provision.

Following the evidentiary hearing on the motion to enforce the settlement agreement, the court made the following findings on the record: "I'm going to deny the [defendants'] motion to enforce the alleged settlement agreement. It seems to me that the plaintiff reserved to itself the right to approve a confidentiality [provision]. Consistent with [the plaintiff's] testimony and e-mails, [the plaintiff] did not obligate [itself] to be reasonable in the approval of the confidentiality [provision], nor did [the plaintiff] obligate itself to respond with specifics as to how the confidentiality [provision] would satisfy the plaintiff.

"In fact, consistent with the e-mails, the whole point was to put 100 percent of the burden on the drafter, and if the drafter couldn't satisfy . . . the plaintiff, the plaintiff would have the right to reject [the settlement agreement].

"[T]here is just not sufficient evidence before me from which I can make a finding that the confidentiality [provision], which clearly was an essential component of the settlement agreement, was ever approved, and there was no obligation on the part of the plaintiff to respond in detail as to how the confidentiality [provision] should be altered in order to gain its approval. [The plaintiff] particularly reserved to [itself] the right to get an agreement without cost that would satisfy [its] needs.

"[The plaintiff] didn't get it. [It] rejected what was sent . . . whether other things impacted that or didn't impact that I don't know, and I don't think there's enough evidence before me from which I can make such a finding." The court then denied the defendants' motion to enforce the settlement agreement.

We begin by setting forth our standard of review. Because the defendants do not challenge the underlying facts found by the court, but essentially challenge the court's legal conclusion that there was not an enforceable settlement agreement, "we must determine whether that conclusion is legally and logically correct and whether it finds support in the facts set out in the memorandum of decision." *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 64–65, 978 A.2d 531 (2009); see also *Bowman* v. *1477 Central Avenue Apartments, Inc.*, 203 Conn. 246, 256, 524 A.2d 610 (1987).

The court found that the confidentiality provision was an essential component of the settlement agreement and that the plaintiff never approved the confidentiality provision drafted by the defendants. The

court further found that the plaintiff reserved the right to reject the confidentiality provision and that the plaintiff did not obligate itself to respond with specifics as to how the confidentiality provision must be amended to satisfy the plaintiff. The defendants do not challenge those findings.

We, therefore, conclude that the court's conclusion that there was not an enforceable settlement agreement is legally and logically correct and is supported by the facts set forth by the court on the record. A court may only enforce a settlement agreement "when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement." (Citation omitted; internal quotation marks omitted.) *Thomsen* v. *Aqua Massage International, Inc.*, 51 Conn. App. 201, 204, 721 A.2d 137 (1998), cert. denied, 248 Conn. 902, 732 A.2d 178 (1999). The court found that the parties had failed to agree to the terms of the confidentiality provision, which was an essential part of the settlement agreement. Accordingly, it was proper for the court to conclude that the settlement agreement was not enforceable.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] St. Louis RV Park is a Missouri general partnership. George Hudson and Mary Hudson were the two general partners of the partnership during all relevant periods.

[2] The defendants also claim that if we conclude that the court improperly found that they breached the agreement, the court's decision to award the plaintiff attorney's fees must also be reversed. Because we conclude that the court did not err in finding that the defendants breached the agreement, we need not disturb the award of attorney's fees on the basis of the defendants' claim.

[3] Although the court rendered judgment on the complaint in favor of the plaintiff, it is aggrieved for purposes of this appeal because the court did not grant all of the damages and attorney's fees that the plaintiff sought. See *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 47 Conn. App. 478, 481, 705 A.2d 566 (1998) (although prevailing party generally not aggrieved for purposes of appeal, prevailing party can be aggrieved if relief awarded falls short of relief sought).

[4] During her testimony, Mary Hudson conceded that there was a contract and that the first sentence of her letter was a mistake. She reiterated her belief, however, that the quality of the internet service was poor and that she wanted the equipment removed.

[5] The dollar amount of the settlement has been redacted by agreement of the parties in deference to the plaintiff's request for confidentiality with respect to the settlement, and because the dollar amount of the alleged settlement is not germane to our analysis.