## EDWARD BRENNAN *v.* BURGER KING CORPORATION
## (AC 15770)

Schaller, Freedman and Daly, Js.

Argued December 12, 1996—officially released August 5, 1997

*James P. Brennan*, for the appellant (defendant).

*Kie N. Westby*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of the trial court, rendered after a jury verdict, in favor of the plaintiff in this negligence action. The defendant claims that the trial court improperly (1) refused to set aside the verdict for damages as it pertains to future medical expenses, (2) calculated the amount of premiums paid by the plaintiff to secure his right to collateral source benefits pursuant to General Statutes § 52-225a (c), and (3) refused to reduce the award for economic damages by the amount paid but not recoverable by Medicare. We affirm the judgment in part and reverse it in part.

The jury reasonably could have found the following facts. On February 14, 1994, at approximately 1:15 p.m., the plaintiff visited the defendant's restaurant in Watertown. After finishing his meal and leaving the building, the plaintiff slipped and fell on an icy portion of the restaurant parking lot. As a result of the fall, the plaintiff sustained a fracture of his right femur, requiring surgery and extensive rehabilitation.

Richard Matza, a physician, testified for the plaintiff as an expert witness. Matza performed the surgery on the plaintiff's leg after his fall and continued to see the plaintiff for the injury until early 1995. Because of the nature of the plaintiff's injuries, Matza had to place a number of plates, screws and bands in the plaintiff's leg to hold the bone fragments together. Although the plaintiff already had a 25 percent permanent disability in his right leg due to knee replacement surgery in 1991, his disability increased 20 percent as a result of the injuries sustained in the 1994 fall. Because Matza joined the bone together where the fracture occurred, the plaintiff's right leg is now two inches shorter than his left leg. The plaintiff will continue to suffer a loss of strength in the right leg, a decrease in mobility and flexibility in the right leg, and balance and coordination problems. As a result of the injury, the plaintiff will have difficulty performing daily activities and will be unsteady and at risk when walking. According to Matza, there was a 15 percent chance that the plaintiff would require future surgery to remove the hardware placed in his leg. Matza was never asked, nor did he testify, as to what any future care might cost.

The jury awarded the plaintiff a total of $210,000, including $43,848.33 for past economic damages, $40,000 for future economic damages, $84,848.67 for past noneconomic damages, and $41,303 for future noneconomic damages. The jury found that the plaintiff was 5 percent contributorily negligent and deducted

$10,500 from the award, thereby reducing it to $199,500. Thereafter, the defendant filed a motion for remittitur of the portion of the verdict for future economic damages. The defendant argued that there was insufficient evidence to support the jury's award for future economic damages. The trial court denied the motion for remittitur. The trial court, however, granted the defendant's motion for a hearing concerning the plaintiff's collateral sources and, pursuant to General Statutes § 52-225a, reduced the award by $11,156.79, rendering a corrected judgment in the amount of $188,343.21. This appeal followed.

I

The defendant claims first that the trial court improperly denied its motion for remittitur seeking to vacate the jury's award for future economic damages. The defendant claims that the evidence introduced by the plaintiff to prove future economic damages did not provide the jury with a sufficient basis to arrive at an award for such damages. We are unpersuaded.

" 'Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant.' *Wochek* v. *Foley*, 193 Conn. 582, 586, 477 A.2d 1015 (1984)." *Wood* v. *Bridgeport*, 216 Conn. 604, 611, 583 A.2d 124 (1990). "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. . . . The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness." (Citation omitted.) *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988).

"It is well established that [i]n assessing damages in a tort action, a trier is not concerned with possibilities

but with reasonable probabilities. . . . Consequently, as [our Supreme Court] stated in *Jerz* v. *Humphrey*, 160 Conn. 219, 224, 276 A.2d 884 (1971), as to future medical expenses, the jury's determination must be based upon an estimate of reasonable probabilities, not possibilities. Indeed, we expressly reaffirmed this principle in *Seymour* v. *Carcia*, [221 Conn. 473, 481, 604 A.2d 1304 (1992)]. The obvious purpose of this requirement is to prevent the jury from awarding damages for future medical expenses based merely on speculation or conjecture. Because, however, [f]uture medical expenses do not require the same degree of certainty as past medical expenses . . . [i]t is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date . . . when there is also a degree of medical certainty that future medical expenses will be necessary." (Citations omitted; internal quotation marks omitted.) *Marchetti* v. *Ramirez*, 240 Conn. 49, 54–55, 688 A.2d. 1325 (1997).

In this case, the plaintiff's medical expert, Matza, testified that the degree of permanent disability in the plaintiff's right leg increased 20 percent as result of the injuries he sustained from the fall in 1994. Matza further testified that there was a reasonable medical probability that the plaintiff would incur future medical expenses as a result of his injuries. He testified that there was a 15 percent probability that the hardware placed in the plaintiff's leg would have to be removed, and that this procedure would require further surgery and hospitalization. Matza testified that there would be medical expenses involved in the treatment. Evidence was introduced at trial to establish the medical expenses that the plaintiff had incurred by 1995, which included the cost for surgery and rehabilitation. There was also testimony by Matza that the plaintiff will continue to suffer from a loss of strength, mobility and motion, and will

have increased problems with balance and coordination. He further testified that these conditions will increase the plaintiff's susceptibility to accidents and injuries while walking or performing other daily activities. Viewing the record as a whole in light of the foregoing standards, we conclude that the evidence was sufficient to provide the jury with a basis for an award for future medical expenses and, thus, the jury's award was appropriate.

## II

The defendant claims next that the trial court improperly calculated the amount of premiums paid by the plaintiff to secure his right to collateral source benefits pursuant to § 52-225a (c).[1] We agree.

[1] General Statutes § 52-225a provides: "Reduction in economic damages in personal injury and wrongful death actions for collateral source payments. (a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

General Statutes §§ 52-225a through 52-225c provide that when a trier of fact makes an award of damages to compensate a claimant, the economic damages shall be reduced by an amount equal to the total amount of collateral sources paid to the claimant less the total amount paid to secure his right to any collateral source benefit that he received. At trial, the plaintiff claimed that the total amount of insurance premiums paid to secure his right to the collateral source benefit pursuant to § 52-225c should be calculated from 1966, the year in which he first injured his right knee. The defendant argued that the correct date from which to calculate the premiums paid by the plaintiff should be 1994, the year in which the slip and fall incident at issue here occurred. The trial court concluded that the date from which to calculate the premiums was 1991, the year in which the plaintiff underwent knee replacement surgery on his right leg.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 20, 658 A.2d 83 (1995). We note that in enacting § 52-225a (c) the legislature abolished the collateral source rule, which had its origin in the common law. It is a rule of statutory construction that statutes in derogation of the common law should be strictly construed so as not to extend, modify or enlarge its provisions beyond its scope by

the mechanics of statutory construction. *Lynn* v. *Haybuster Mfg., Inc.,* 226 Conn. 282, 289, 627 A.2d 1288 (1993); *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975).

We interpret § 52-225a to mean that the plaintiff is entitled to a credit for premiums paid to secure his right to collateral source benefits starting with the initial date of the insurance policy period during which the injury occurred. The alternative presented by the defendant fails to take into account the practical realities of insurance coverage with respect to collateral source benefits. The alternative suggested by the plaintiff and the trial court would allow calculation of the premiums paid by a claimant to secure his right to collateral source benefits starting from the date of the most recent prior claim under the policy. Calculating the premiums paid to secure a claimant's right to collateral source benefits in this manner could entitle a claimant to be reimbursed for premiums that he had paid long before he benefited from a collateral source due to the defendant's actions. Section 52-225a (c) was not meant to entitle the plaintiff to such a windfall. Furthermore, in abolishing the collateral source rule, the legislature sought to eliminate duplicative recoveries by the plaintiff for his injuries, first from a collateral source and then from the defendant. Section 52-225a (c) ensures that, despite the legislature's abrogation of the rule, the injured plaintiff is still fully compensated for any expenditures made by him or on his behalf in order that he might secure the collateral source benefits necessary to recover from his injuries. By calculating the premiums paid by the plaintiff to secure his right to those collateral source benefits starting with the beginning of the policy period during which the injury occurred, this purpose is accomplished. We conclude, therefore, that the trial court improperly calculated the amount of premiums paid to secure collateral source benefits.

### III

The defendant claims finally that the trial court improperly refused to reduce the economic damages award by the amount paid but not recoverable by Medicare.

Section 52-225a provides that an award of economic damages shall be reduced by an amount equal to the collateral source benefits received by the claimant, but that there shall be no reduction for a collateral source benefit for which a right of subrogation exists. At trial, the plaintiff offered evidence of benefits he received from Medicare in the amount of $27,764.13. The plaintiff argued that under 42 U.S.C. § 1395y (b) (2) (B) and 42 C.F.R. § 411.21, this figure represents the Medicare lien for which a right of subrogation exists and therefore, under § 52-225a, no portion of it should be deducted from the judgment. The defendant conceded that it is not entitled to a reduction in the verdict for the amount that the plaintiff must repay Medicare. Instead, the defendant argued that it is entitled to a reduction in the verdict under § 52-225a for the portion that Medicare paid as a collateral source that it is not entitled to recover from the plaintiff under 42 C.F.R. § 411.37 (c). The defendant argued that under 42 C.F.R. § 411.37 (c) Medicare does not have a lien or right of subrogation for a set ratio of a beneficiary's procurement cost in obtaining a judgment against a tortfeasor or its insurer. The defendant argued that since Medicare is not entitled to be reimbursed by the plaintiff for Medicare's proportional share of the plaintiff's procurement cost under 42 C.F.R. § 411.37 (c), this amount should be deducted from the economic damages under § 52-225a.

The trial court agreed with the plaintiff and determined that under 42 U.S.C. § 1395y (b) (2) (B) and 42 C.F.R. §§ 411.21 and 411.24 there is a right of recovery

of medicare payments made to a recipient.[2] The trial court determined that, under these provisions, Medicare had a right of recovery for the payment that it made to the plaintiff. The trial court concluded that, since the Medicare payments were a collateral source for which a right of subrogation exists under § 52-225a, the defendant was not entitled to a reduction in the verdict for any portion of those payments. We disagree.

Section 411.52 of 42 C.F.R. provides that conditional Medicare payments may be made when the Medicare benefits are claimed for the treatment of injuries caused by a third party. Moreover, 42 U.S.C. § 1395y (b) (2) (B) and 42 C.F.R. §§ 411.24 and 411.26 establish Medicare's subrogation right and its right to file suit in order to recover those conditional payments from any individual or other entity entitled to payment from a third party payor. The federal regulations, however, also clearly state that Medicare's right of recovery is limited in certain circumstances. Under 42 C.F.R. § 411.37, Medicare's recovery is restricted where the Medicare beneficiary receives payment from a third party as a result of a judgment or settlement. Under § 411.37 (c), Medicare's recovery is limited when the conditional Medicare payments that the beneficiary received are less than the amount obtained as a result of a judgment or settlement from a liable tortfeasor or its insurer. In that case, Medicare's right of recovery is limited by a proportional share of the beneficiary's procurement cost in obtaining a judgment or settlement from the liable tortfeasor. Thus, when a Medicare beneficiary obtains a judgment from a liable tortfeasor that exceeds the sum of the conditional Medicare payments received, Medicare's recovery from the beneficiary is computed to be the Medicare payment amount, minus a share of

---

[2] The trial court, relying on these same federal provisions, determined "conditional payments" to be Medicare payments for services for which another insurer is the primary payer.

the procurement cost associated with the judgment. See *Estate of Washington* v. *United States Secretary of Health & Human Services*, 53 F.3d 1173, 1175 (10th Cir. 1995). Therefore, Medicare is subrogated only to that amount that it paid the beneficiary, minus its share of the procurement cost as computed under 42 C.F.R. § 411.37 (c).

In this case, the judgment against the defendant was in the amount of $210,000. The trial court found that the plaintiff received conditional Medicare payments in the amount of $27,764.13. Therefore, since the judgment exceeds the Medicare payments received by the plaintiff, 42 C.F.R. § 411.37 (c) is applicable in determining the amount that Medicare is entitled to recover from the plaintiff. Under 42 C.F.R. § 411.37 (c), Medicare is not subrogated to the entire amount of conditional payments that it made to the plaintiff but, instead, only for that amount minus a proportional share of the procurement cost associated with the judgment. Accordingly, the trial court improperly determined that the entire amount of Medicare payments received by the plaintiff constituted a collateral source for which a right of subrogation exists under § 52-225a.

The judgment is reversed only as to the amount of insurance premiums and the amount of Medicare payments by which the amount of damages was reduced, and the case is remanded for further proceedings to determine the amount to be deducted from the verdict concerning collateral source benefits. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.