ROSELANDE REJOUIS, ADMINISTRATRIX
(ESTATE OF JEAN CLAUDE BOITEUX)
*v.* GREENWICH TAXI, INC., ET AL.
(AC 18706)

Schaller, Hennessy and Dupont, Js.

Argued December 16, 1999—officially released May 23, 2000

*Laurel Fedor*, for the appellant (plaintiff).

*Mark F. Katz*, for the appellees (named defendant et al.).

*Opinion*

SCHALLER, J. The plaintiff, Roselande Rejouis, administratrix of the estate of the decedent, Jean Claude Boiteux, appeals from the judgment of the trial court rendered following the granting of the motion to set aside the verdict filed by the defendants Greenwich Taxi, Inc., Stamford Taxi, Inc., and Tibbetts Enterprises, Inc.[1] On appeal, the plaintiff claims that the trial court

---

[1] The jury's verdict was returned against the corporate defendants, Greenwich Taxi, Inc., Stamford Taxi, Inc., and Tibbetts Enterprises, Inc. Those defendants filed the motion to set aside the verdict, which the trial court granted. We refer in this opinion to those defendants as the defendants. The other defendants, Hubert M. Tibbetts, Gunhild M. Tibbetts, Work Injury Compensation Plan and Joseph Boskello, are not parties to this appeal.

improperly set aside the verdict on the grounds that there was insufficient evidence to support the damages awarded by the jury and the jury's verdict for the plaintiff was influenced by sympathy. We agree.[2]

The following facts and procedural history are relevant to this appeal. In September, 1988, the decedent was an independent contractor working as a taxicab driver for the defendants under a contract called the "Taxicab Lease Agreement." The parties executed another document called the "Independent Driver/Contractor Work Injury Compensation Plan" (compensation plan).[3] In addition to the lease payments, the decedent made regular payments into the compensation plan.

On March 7, 1989, the decedent went to work driving his taxicab. The decedent was found murdered outside his taxicab in Stamford on the morning of March 8, 1989. At trial, Malka Shah of the office of the chief medical examiner testified that when the decedent was examined at approximately 9:30 a.m. on March 8, 1989, he had been dead for eight to ten hours. At the time of death, the decedent was thirty-four years of age.

In her amended complaint,[4] the plaintiff alleged, inter alia, that the defendants breached their contract with

---

[2] The plaintiff appears to argue in her initial brief that, in the alternative, even if there was insufficient evidence to award damages under a common-law theory, there was a sufficient basis to allow the jury to award them under the state workers' compensation law. We need not address this alternate ground because we conclude that the trial court improperly set aside the verdict for other reasons.

[3] The compensation plan provided: "Greenwich Taxi, Inc., agrees to compensate [the decedent], an independent driver/contractor, under the guidelines of the Connecticut Workmen's Compensation Plan, for injury due to work related accidents. Terms include an assumption of $14,500 per annum net income. Total payments for any single claim or occurrence are limited to $50,000. This agreement will remain in effect as long as said driver/contractor is current in his payment of the weekly fee covering this protection."

[4] Counts two, three and four of the plaintiff's amended complaint alleged violations of the Connecticut Unfair Trade Practices Act and fraudulent

the decedent. Specifically, the plaintiff contended that the decedent's death was work related and, therefore, the defendants were obligated to pay the decedent's estate pursuant to the compensation plan. At the conclusion of the plaintiff's case, the defendants moved for a directed verdict on count one, the breach of contract claim, with respect to which the court reserved decision. After hearing the evidence, the jury found that the decedent's death was work related. The jury also found the defendants liable for damages and awarded the plaintiff $50,000 plus prejudgment interest. In response, the defendants filed a motion to set aside the verdict[5] and a motion for remittitur.[6] Although the trial court, determined that the decedent's death was work related, it granted the defendants' motion to set aside the verdict on the ground that there was insufficient evidence to support the damages awarded by the jury and because the jury's verdict for the plaintiff was influenced by sympathy. This appeal followed.

At the outset, we note that "[t]he setting aside of a verdict can occur for two general reasons. First, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied. *Maroun* v. *Tarro*, 35 Conn. App. 391, 396, 646 A.2d 251, cert. denied, 231 Conn. 926, 648 A.2d 1641 (1994). Second, a verdict may be set aside if its result justifies a suspicion that a juror or jurors were influenced by prejudice, corrup-

misrepresentation. The trial court directed a verdict in the defendants' favor on these counts because they were brought after the statute of limitations had expired.

[5] The defendants claimed that the court should set aside the verdict because there was insufficient evidence on which the jury could find that the decedent's death was work related and that there was no basis on which an award for damages could be based.

[6] The court did not rule on the motion for remittitur.

tion or partiality." *Novak* v. *Scalesse*, 43 Conn. App. 94, 97–98, 681 A.2d 968, cert. granted on other grounds, 239 Conn. 925, 682 A.2d 1004 (1996) (appeal withdrawn, May 13, 1997). We will first discuss whether the trial court properly determined that the jury mistakenly applied a legal principle or could not apply a legal principle because of a lack of evidence.

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. *O'Brien* v. *Seyer*, 183 Conn. 199, 208, 439 A.2d 292 (1981). The supervision which a judge has over the verdict is an essential part of the jury system. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. *Burr* v. *Harty*, 75 Conn. 127, 129, 52 A. 724 (1902). The court has a duty to set aside the verdict where the jury's action is so unreasonable as to suggest that it was the product of such improper influences. *State* v. *Avcollie*, 178 Conn. 450, 457, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), aff'd, 188 Conn. 626, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 19–20, 96 A. 169 (1915). . . .

"The decision to set aside a verdict entails the exercise of a broad legal discretion that, in the absence of clear abuse, we shall not disturb. *O'Brien* v. *Seyer*, supra, [183 Conn. 208]. Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its

discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness; *Labatt* v. *Grunewald,* 182 Conn. 236, 240–41, 438 A.2d 85 (1980); *Levitz* v. *Jewish Home for the Aged, Inc.,* 156 Conn. 193, 198, 239 A.2d 490 (1968); since the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797 (1898). Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988); *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972). The focus of our inquiry is the action of the trial court in setting aside the verdict. *Campbell* v. *Gould,* 194 Conn. 35, 39, 478 A.2d 596 (1984).

"Litigants, however, have a constitutional right to have issues of fact determined by a jury. *Mather* v. *Griffin Hospital,* supra, [207 Conn.] 138; *Seals* v. *Hickey,* 186 Conn. 337, 350, 441 A.2d 604 (1982); *Jacobs* v. *Goodspeed,* 180 Conn. 415, 417, 429 A.2d 915 (1980). The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970). Since, in setting aside the verdict, the trial court has deprived the party in whose favor the verdict was rendered of his constitutional right to have factual issues resolved by the jury, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its

discretion. *Jacobs* v. *Goodspeed*, supra [417]." (Internal quotation marks omitted.) *Palomba* v. *Gray*, 208 Conn. 21, 23–25, 543 A.2d 1331 (1988).

In the present case, the plaintiff claims that there was sufficient evidence to support the damages awarded by the jury and, therefore, the trial court improperly set aside the verdict. Specifically, the plaintiff contends that the written terms of the contract accompanied by the evidence and testimony presented at trial, provided the jury with an adequate basis to award damages. We agree.

"A court should be especially hesitant to set aside a jury's award of damages." *Zarrelli* v. *Barnum Festival Society, Inc.*, 6 Conn. App. 322, 326, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). "That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established. See *Ball* v. *T. J. Pardy Construction Co.*, 108 Conn. 549, 551, 143 A. 855 (1928)." *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 420, 446 A.2d 799 (1982). "There are no unbending rules as to the evidence by which [damages for breach of contract] are to be determined. . . . The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party." (Citation omitted; internal quotation marks omitted.) *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). "Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. *Wochek*

v. *Foley*, 193 Conn. 582, 586, 477 A.2d 1015 (1984). *Wood* v. *Bridgeport*, 216 Conn. 604, 611, 583 A.2d 124 (1990)." (Internal quotation marks omitted.) *Brennan* v. *Burger King Corp.*, 46 Conn. App. 76, 79, 698 A.2d 364 (1997), aff'd, 244 Conn. 204, 707 A.2d 30 (1998). "The plaintiff has the burden of proving the extent of the damages suffered. *Johnson* v. *Flammia*, [169 Conn. 491, 501, 363 A.2d 1048 (1975)]. Although the plaintiff need not provide such proof with '[m]athematical exactitude . . . the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate.' " *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 65, 717 A.2d 77 (1998).

In the present case, we note from the outset that the record reveals confusion among the parties and the trial court concerning the nature of the cause of action. Because the plaintiff's claim was based on a breach of contract theory, the plaintiff did not have to prove, inter alia, the elements of liability and damages pertaining to a wrongful death action. Although the compensation plan was ambiguous as to the specific amount of benefits that a claimant was entitled to receive if death occurred as a result of a work-related accident, the issue before us is whether the plaintiff introduced sufficient evidence to allow the jury to make a reasonable determination of the compensation contract payment due for death. Simply put, the issue is whether the jury could reasonably conclude that the maximum contract benefit of $50,000 should be paid for a work-related death.

The court properly charged the jury on the law of contracts and damages. The terms of the compensation plan itself provided for an assumption that the plaintiff would make $14,500 annually. The compensation plan further provided that each accident or injury was limited to a monetary compensation of $50,000. The plaintiff also introduced evidence that the decedent made

regular payments into the compensation plan. In addition, Joseph Boskello, general manager of Stamford Taxi, Inc., and Greenwich Taxi, Inc., testified as to the guidelines of the compensation plan. Specifically, Boskello testified that, in the past, claims under the plan were paid if he believed a driver was on duty when he was injured and there was sufficient medical documentation. Boskello even testified that "if [the decedent's death] occurred while he was on duty, yes, the [compensation plan] would be happy to cover it." Boskello also testified that if a driver was out of work he would be compensated two thirds of his pay. Furthermore, Boskello confirmed that the $50,000 was the maximum benefit that the plan would cover for each work-related accident.

From the very nature of the circumstances, the amount of the loss to the decedent's estate could not be proven with exactitude, and all that is required is that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation that will enable the jury to make a fair and reasonable estimate. See *State* v. *Davis*, 3 Conn. App. 359, 368, 488 A.2d 837 (1985). We conclude that it was reasonable for the jury to conclude that the plaintiff was entitled to $50,000, representing the maximum amount that could be awarded under the terms of the compensation plan. Furthermore, the ambiguous language of the compensation plan should not be construed against the interests of the plaintiff to deny coverage. We note the general rule that ambiguous language in a contract should be interpreted against the drafter. See, e.g., *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 329, 714 A.2d 1230 (1998); *Levine* v. *Advest, Inc.*, 244 Conn. 732, 755–56, 714 A.2d 649 (1998). The defendants drafted the compensation plan in a fashion that would not allow a jury to determine the appropriate compensation with mathematical certainty. The jury,

however, was not prevented from making an assessment that was fair and reasonable under the circumstances. We conclude, therefore, that the court properly charged the jury on the law of contracts and damages, and that there was sufficient proof for the jury to award damages.

The other ground for setting aside a verdict is when circumstances justify a suspicion that the jury was influenced by prejudice, corruption or partiality. "The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio*, 142 Conn. 80, 86, 111 A.2d 555 (1955); *Herb* v. *Kerr*, [190 Conn. 136, 139, 459 A.2d 521 (1983)]; *Kiniry* v. *Danbury Hospital*, 183 Conn. 448, 461, 439 A.2d 408 (1981); *Katsetos* v. *Nolan*, 170 Conn. 637, 656, 368 A.2d 172 (1976)." (Internal quotation marks omitted.) *Mather* v. *Griffin Hospital*, supra, 207 Conn. 139.

In the present case, the trial court suggested that the jury might have awarded the verdict out of sympathy. There is nothing in the record to indicate that the jury was improperly influenced by sympathy for the plaintiff. The court concluded that there was sympathy, stating that "[t]here was great sympathy engendered by the testimony of the plaintiff, the unmarried mother of four children by the deceased, which was not lost upon the jury . . . ." The fact that the jury had knowledge that the plaintiff is the unmarried mother of four children, however, does not justify the court's decision to set aside the verdict on this ground. The court specifically charged that the "verdict must not be influenced by sympathy or prejudice" for the plaintiff. Nor does the size of the verdict so shock the sense of justice as to

justify the court's decision to set aside the verdict. We cannot conclude that the circumstances justified a suspicion that the jury was influenced by prejudice, corruption or partiality. The setting aside of the verdict, therefore, cannot be sustained on that ground. *State* v. *Avcollie*, supra, 178 Conn. 460. Accordingly, we conclude that the trial court abused its discretion in granting the defendants' motion to set aside the verdict.

The judgment is reversed and the case is remanded with direction to reinstate the jury's verdict and to render judgment on the verdict in favor of the plaintiff.

In this opinion the other judges concurred.