[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST-VERDICT MOTIONS
This matter comes before the court concerning motions by the defendant Frank L. Falco (Falco) for remittitur and to set aside the verdict, filed August 10, 2001 (##127 and 128). On August 3, 2001, after trial, the jury rendered a verdict in favor of the plaintiff, Paul Catalano (Catalano) and against Falco in the total amount of $60,000.00. On October 15, 2001, the court heard oral argument in connection with the motions. The primary focus of the motions submitted by the defendant is his contention that the court improperly permitted a "trial by ambush" by allowing the jury to hear testimony from the plaintiff's orthopedist and from the plaintiff about the possibility of future back surgery for the CT Page 15184 plaintiff and his fear thereof. (See motion to set aside the verdict, pp. 3, 5-6.) The court now issues this memorandum of decision.
 I. BACKGROUND
The court sets forth below part of the procedural history of this matter since it bears on the resolution of the above-cited motions. This personal injury case arose from an automobile accident which occurred in Southington, Connecticut, on May 5, 1998. The return date was September 28, 1999. In November, 1999, as part of the pre-trial discovery process, the plaintiff provided the defendant with a report from Gerald J. Becker, M.D., an orthopedist, dated April 29, 1999. (See transcript of oral argument of July 31, 2001, p. 7, concerning the defendant's motion for a continuance, dated July 30, 2001, #119 and #129; and see plaintiff's exhibit 36, which contains the report.) In his report, Dr. Becker described his evaluation of Catalano and referred to an automobile accident in which Catalano suffered injuries to his back and leg.[1] In pertinent part, the report stated that Catalano's spine showed evidence of "spondylolisthesis at L4-5 with some degree of degeneration." (See plaintiff's exhibit 36, p. 2 of April 29, 1999 report.) Dr. Becker recommended lumbar stabilization exercises and anti-inflammatories. He also stated, "[i]f this fails to control pain and he remains significantly symptomatic, I would recommend a trial of a polypropylene TLSO. If this fails to adequately resolve symptoms, then he would need to consider the option of decompression and fusion at L4-5." (See plaintiff's exhibit 36, p. 2 of April 29, 1999 report.)[2]
On May 3, 2001, the plaintiff filed his disclosure of expert witness (#113), in which he stated that Dr. Becker was expected to testify concerning his examination, diagnosis, and treatment of Catalano. Regarding the substance of the facts and opinions to which he was expected to testify, the plaintiff stated in his disclosure that "Dr. Becker is expected to testify substantially in accordance with his treatment notes and evaluation and consultation reports, all of which have been provided to defendant's counsel."
Jury selection in this case began on Tuesday, July 24, 2001 and was concluded on Friday, July 27, 2001. (See transcript of oral argument concerning post-verdict motions, October 15, 2001, pp. 21-22.) The defendant claims to have learned for the first time, on Tuesday, July 24, 2001, the first day of jury selection, that Dr. Becker's testimony would address the possibility of future back surgery for Catalano. (See motion to set aside the verdict, pp. 2-3.)
On Thursday, July 26, 2001, Falco filed his motion for protective order (#115) and his motion in limine to preclude testimony and/or evidence by CT Page 15185 Gerald Becker, M.D. regarding future medical treatments, necessity of surgery and disability rating assigned to Paul Catalano (#116).[3] In these motions, Falco contended that the disclosure of Dr. Becker did not comply with Practice Book § 13-4; that his deposition, which was scheduled for the evening of Monday, July 30, should be barred; and that no testimony or evidence from him should be presented at trial.[4]
Catalano filed his objections to both motions, dated Friday, July 27, 2001 (##117 and 118). The court heard oral argument on these motions on Monday, July 30, 2001. The court found that the previous disclosure of Dr. Becker's expected testimony in May, 2001 had been adequate to put the defendant on notice of it, declined to prevent the deposition, and stated that individual evidentiary matters raised in the deposition would be addressed subsequently. (See transcript of July 30, 2001.)[5]
Thereafter, on Monday afternoon, July 30, 2001, after jury selection had been completed on the previous Friday, and with the presentation of evidence scheduled to commence on Wednesday, August 1, 2001, Falco filed a motion to continue the trial date (#119 and #129), for three months, until November 1, 2001. His motion stated that the purpose of the requested continuance was to have his own experts review the "late disclosure" of Dr. Becker's opinions concerning the "necessity of future medical treatments, the medical probability for future surgery, and a likely disability rating." Falco contended that he would be unfairly prejudiced in having to defend the case since he had been "prevented, until immediately before trial, from learning all of the relevant facts." (See Falco's motion to continue trial date.)[6] The court heard oral argument on the motion for a continuance on Tuesday, July 31, 2001. The motion was denied by the court.
On August 1, 2001, Falco filed a second motion in limine (#120), again seeking to preclude the testimony of Dr. Becker and seeking to preclude testimony concerning possible future surgery. The court heard argument on the motion and issued a ruling on that date. (See transcript of August 1, 2001, pp. 19-21.) The presentation of evidence at trial began on Wednesday, August 1, 2001 and concluded on Friday, August 3, 2001.
 II. DISCUSSION A. Standard of Review Concerning Motions To Set Aside A Verdict.
"When considering a motion to set aside the verdict, this court's function is to "determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict.' (Internal quotation marks omitted.) Skrypiec v. Noonan,228 Conn. 1, 10, 633 A.2d 716 (1993)." Preston v. Wellspeak,62 Conn. App. 77, 81, 767 A.2d 1259 (2001). "A trial court may set aside CT Page 15186 a verdict on a finding that the verdict is manifestly unjust because, given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case could be applied." Card v. State, 57 Conn. App. 134, 138,747 A.2d 32 (2000). "A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) Kurti v. Becker, 54 Conn. App. 335, 337, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999).
"Before determining whether the granting of a motion to set aside is proper, the trial court must look at the relevant law that it gave the jury to apply to the facts, and at the facts that the jury could have found based on the evidence. The law and evidence necessarily define the scope of the trial court's legal discretion. . . . This discretion vested in the trial court is not an arbitrary or capricious discretion, but rather, it is legal discretion to be exercised within the boundaries of settled law. . . . This limitation on a trial court's discretion results from the constitutional right of litigants to have issues of fact determined by a jury. . . . The trial court, upon a motion to set aside the verdict, is called on to question whether there is a legal reason for the verdict and, if there is not, the court must set aside the verdict." (Citations omitted; internal quotation marks omitted.) Suarez v. Sordo,43 Conn. App. 756, 759-60, 685 A.2d 1144 (1996), cert. denied,240 Conn. 906, 688 A.2d 334 (1997).
"[T]he constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Internal quotation marks omitted.) Rejouis v. Greenwich Taxi,Inc., 57 Conn. App. 778, 783, 750 A.2d 501, cert. denied, 254 Conn. 906,755 A.2d 882 (2000). "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." (Internal quotation marks omitted.)Wichers v. Hatch, 252 Conn. 174, 189, 745 A.2d 789 (2000).
The court first addresses the defendant's arguments concerning Dr. Becker's testimony and concerning the admission of certain demonstrative exhibits. It then considers those made concerning the weight of the evidence and the claimed excessiveness of the verdict. In addition, the court also addresses below the motion for remittitur.
 B. Evidence Concerning Future Surgery And Fear of Future Surgery
CT Page 15187
In his motion to set aside the verdict, the defendant renews the arguments made in his previous, pre-trial motions concerning Dr. Becker's testimony. Falco argues that the court erred when it refused to prevent Dr. Becker's deposition, when it refused to prohibit his testimony in its entirety, when it declined to postpone the trial date, and in its rulings regarding his testimony about possible future surgery. He claims that the court erred also when it allowed the plaintiff to testify concerning his fear of future surgery.
Practice Book § 13-4(4) provides that any plaintiff expecting to call an expert witness at trial shall disclose such expected testimony "within a reasonable time prior to trial." This subsection also provides for the filing of a motion to preclude such testimony in the event that disclosure does not occur "in accordance with this subsection." An expert who is not so disclosed shall not testify . . . if the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party." (See P.B. § 13-4(4).)
"A trial court's decision on whether to impose the sanction of excluding the testimony of a party's expert rests within the court's sound discretion." (Internal quotation marks omitted.) Berry v. Loiseau,223 Conn. 786, 800, 614 A.2d 414 (1992). Practice Book § 13-4(4) is "intended to furnish a [party] with the details of [another party's] reliance on expert testimony in order to assist him with the preparation of his case. The rules of discovery are designed to make a trial less of a game of blindman's [buff] and more of a fair contest with the basic issues and facts disclosed to the fullest extent possible." (Internal quotation marks omitted.) Ciarlelli v. Romeo, 46 Conn. App. 277, 280,699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997).
In the motion to set aside, the defendant argues that he did not know that Dr. Becker would testify as to future treatment and surgery until July 24, 2001, which amounted to trial by ambush. The court found, as it stated on July 30, 2001 in its ruling on the motion to preclude and on the first motion in limine, that the May 3, 2001 expert disclosure, which referred to Dr. Becker's April, 1999 report (which had been previously supplied to the defendant in November, 1999) adequately disclosed that the possibility of future surgery would be one of the subjects of his testimony. As discussed above, that report stated that if other treatment recommendations failed to resolve his symptoms, Catalano "would need to consider the option of decompression and fusion at L4-5." The defendant had that report for approximately one year and five months prior to the expert disclosure in May, 2001, which itself was provided two months and three weeks prior to the commencement of jury selection. If the defendant CT Page 15188 believed that an independent medical examination was required or that it needed to retain an expert, he should have promptly taken steps then toward those ends. Also, notwithstanding this disclosure, no request for a continuance was made until after the jury was selected and evidence was scheduled to commence two days later.
There can be no doubt that the reference to "fusion" in the April, 1999 report meant surgery. See Department of Social Services v. Saunders,247 Conn. 686, 689, 724 A.2d 1093 (1999) ("a surgical procedure known as cervical fusion."); Marchetti v. Ramirez, 240 Conn. 49, 51-52,688 A.2d 1325 (1997) (cervical disc removal and fusion referred to as "back surgery.") Likewise, the term "decompression" also implicated surgery. See Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C.,24 Conn. App. 99, 101, 586 A.2d 614, cert. denied, 218 Conn. 903,588 A.2d 1079 (1991) ("surgery for the removal of two extended disc fragments and the decompression of his spine.") Indeed, at oral argument, on July 31, 2001, the defendant's counsel acknowledged that the April, 1999 report discussed "a possibility of surgery." (See transcript of oral argument, dated July 31, 2001, p. 19.)
Even though the defendant acknowledged being notified of Dr. Becker's opinion which addressed the possibility of surgery, he still claims to have been surprised by the fact that Dr. Becker would testify about it, because, up until May, 2001, Catalano did not see Dr. Becker again and, after he did so, Dr. Becker's May 11, 2001 report did not reference surgery. (See transcript of oral argument, July 30, 2001, pp. 11-12.) At the plaintiff's deposition, which was taken by defense counsel on December 8, 2000, this subject was addressed also. The following exchange occurred:
"Q. When you saw Dr. Becker back in April of 1999, did he speak with you about the possibility of surgery on your back?
A. He said that if I get worse, he would perform an operation. He said he preferred not to. He said we'd wait as long as we could, and that Dr. Hartney [a chiropractor, who testified in person at trial] would help me for now, do what she says.
Q. Did Dr. Becker ask you to call him after your visit to let him know how you were doing?
A. I don't recall if I called him back.
Q. Have you ever talked with Dr. Becker after April of 1999 about surgery? CT Page 15189
A. We never discussed having surgery, I don't think. At one point I was really in a lot of pain, and we were real concerned. Now, I don't know if Carrie Hartney talked to him about it, but at one point I was so bad, I could hardly walk comfortably, and I don't know if I talked to him about an operation.
Q. I guess what I'm asking you is did Dr. Becker ask you to come back and see him if you thought you needed surgery?
A. Yes.
Q. And did you go back and see him?
A. No."
(Defendant's Exhibit I for identification, transcript of Catalano's deposition, pp. 65-66) This exchange provided defendant, again, in December, 2000, wit information indicating the possibility of surgery. While a party's discovery responses and answers at a deposition do not constitute disclosures in compliance with Practice Book § 13-4(4), they are considered by the court here in the context of the defendant's claim that he was the victim of trial by "ambush."
As noted above, plaintiff's exhibit 36 also included Dr. Becker's report of May 11, 2001.[7] In that report, Dr. Becker stated, "[i]t is my impression that Paul Catalano has continued back pain as a result of an aggravation of spondylolisthesis at L4-5. I have recommended a lumbar stabilization program through physical therapy. I shall see him back if pain persists." This report provides a similar diagnosis to that stated in the April, 1999 report. Clearly, Dr. Becker found that the symptoms continued. The May, 2001 report does not withdraw the statement made in the April, 1999 report that surgery may need to be considered.
A disclosure does not need to state the same thing twice in order to provide adequate notice. No "ambush" occurred. In view of the disclosure which was provided, the defendant should not have been surprised that Dr. Becker would testify about the possibility of surgery for Catalano.
The defendant also argues that the April, 1999 report was not adequate because it "doesn't say anything about whether or not surgery is necessary to a reasonable medical probability, and we know that Becker didn't think it was because he ultimately testified that there was a 30 per cent chance. It doesn't even say that he is recommending it." (See transcript of oral argument, October 15, 2001, p. 28.)
To support this argument, the defendant cites the decisions in CT Page 15190Marchetti v. Ramirez, supra, Seymour v. Carcia, 221 Conn. 473,604 A.2d 1304 (1991), and Calvi v. Agro, 59 Conn. App. 732, 757 A.2d 1260
(2000) for the proposition that an award for future medical expenses is proper "when there is also a degree of medical certainty that future medical expenses will be necessary." (Internal quotation marks omitted.)Marchetti v. Ramirez, supra, 240 Conn. 55. (See motion to set aside the verdict, pp. 4-5.) The defendant contends that since Dr. Becker testified that there was only a thirty per cent chance of surgery, his testimony "certainly does not meet the standard set by our Supreme Court. . . ." (See motion to set aside the verdict, p. 5.)
This line of argument ignores the Supreme Court decisions previously cited by this court in this case at the oral argument of the motion for continuance which was held on July 31, 2001. The court cited to counsel our Supreme Court's decisions in Petriello v. Kalman, 215 Conn. 377,576 A.2d 474 (1990) and Goodmaster v. Houser, 225 Conn. 637, 625 A.2d 1366
(1993), concerning the risk of and fear of future medical treatment. (See transcript of July 31, 2001, pp. 27-28.) In addition, on August 1, 2001, references to Petriello were made by counsel in argument and by the court in its ruling on the second motion in limine, concerning future surgery. (See transcript of August 1, 2001, pp. 5-21.)
In a significant omission, the defendant's presentation on his motion to set aside the verdict does not even mention these precedents, let alone distinguish them.[8] As our Supreme Court has noted, recovery based on the fear of the possibility of future medical treatment presents a different concept then that of recovery based on anticipated medical expenses. In Goodmaster v. Houser, supra, 225 Conn. 645-646, the Supreme Court stated, "[w]e have held that a plaintiff may recover for the fear of future medical treatment and disability, as distinguished from a recovery for the future disability itself, even if there is only a possibility that such future treatment or disability will take place.Petriello v. Kalman, 215 Conn. 377, 389-91, 576 A.2d 474 (1990); Figlarv. Gordon, 133 Conn. 577, 585, 53 A.2d 645 (1947). This rule of damages is "based on the unremarkable proposition that a danger of future injury is a present fact and the jury [is] entitled to take into consideration the anxiety resulting therefrom.' Petriello v. Kalman, supra, 389. InPetriello we stated that "[a]nxiety about a completely fictitious or imagined consequence, having no reasonable basis, is not a recoverable element.' Id., 390. We held, however, that evidence of a less than 16 percent chance of a future disability was sufficient to establish a reasonable basis for the plaintiff's fear, and that recovery for the fear associated with the future consequences of an injury was proper even if there was only a possibility that the feared consequence would later develop. Id., 391." (Internal quotation marks omitted.) CT Page 15191
In Marchetti v. Ramirez, supra, 240 Conn. 55, cited by the defendant as noted above, this distinction between the present fear concerning the future and the recovery of future medical expenses was reiterated. The Supreme Court stated, "we are not persuaded that testimony by a medical expert that the plaintiff might need future treatment, coupled with the plaintiff's assertion that he still suffers pain, necessarily removes the issue of future medical expenses from the realm of conjecture." Id. In contrast, it cited Petriello as authority for the proposition that a plaintiff may be entitled to compensation for the increased risk associated with the future. See Marchetti v. Ramirez, supra, 240 Conn. 55, n. 9.
This court recognized the distinction, by excluding from Dr. Becker's testimony his estimate for the cost of future surgery. Since he rated this possibility as only a thirty per cent (30%) chance, recovery of such expenses would have had to been based on speculation. (See transcript of August 1, 2001, pp. 19-21). In contrast, in accordance with Petriello
and Goodmaster, his testimony about the possibility of future surgery was allowed. Likewise, in view of this applicable law, Catalano was properly permitted to testify concerning his fear of future surgery. (See transcript of August 1, 2001, pp. 99-100.)
Under the circumstances, the court properly declined to prevent Dr. Becker from being deposed for the purposes of preserving testimony to be offered at trial. It also properly declined to prohibit his testimony from being presented to the jury. Also, as noted, it excluded portions of his testimony from the jury's consideration and properly allowed other portions to be presented.
In addition, as noted above, plaintiff's exhibit 36, containing both of Dr. Becker's reports, from April, 1999 and May, 2001, was admitted without objection at trial. Even if Dr. Becker's testimony had been excluded completely, the jury would have had these reports to consider. Under such circumstances, in view of the applicable case law discussed above, it still would have been proper for the court to have permitted Catalano to testify about his fear concerning the future.
 C. Motion For Continuance
Whether or not to grant a continuance request is within the court's discretion. See Sullivan v. Yale-New Haven Hospital, Inc.,64 Conn. App. 750, 756-747, ___ A.2d ___ (2001). "Motions for continuance on the eve of trial are disfavored." State v. Bradley, 39 Conn. App. 82,88, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322
(1996). CT Page 15192
As noted, the defendant's continuance request was made after the jury was selected. Commencement of the evidentiary presentation was scheduled for two days later. A continuance of the trial, especially for the lengthy time requested, would have run the substantial risk of losing the jurors already selected. That would have meant the utilization of still more time in jury selection on a case where the jury already was picked. Such a result would have placed an unnecessary burden on the plaintiff and would have been an inappropriate use of the court's resources.
At oral argument on the motion to set aside the verdict, defense counsel stated, "[w]e never had the opportunity to have this person examined by a doctor to find out if you really had the possibility of future surgery. If we had the opportunity to an IMA (sic) I don't know what a doctor would have said." (See transcript of October 15, 2001, pp. 18-19.) To the contrary, the defendant was afforded the opportunity, under the rules of practice, to request a physical examination of the plaintiff See Practice Book § 13-11. He could have done so at any time after receiving the April, 1999 report in November, 1999. He could have done so after receiving the May, 2001 expert disclosure. He could have sought a continuance of the trial at that time for that purpose. The defendant did not avail himself of these opportunities.
Thus, the defendant did not demonstrate that there was good cause for the continuance which was sought on July 30, 2001. In view of these circumstances and in view of its finding that the defendant had been provided with timely disclosure concerning Dr. Becker's expected testimony, the court's denial of the motion for a continuance was proper as well.
 D. Demonstrative Exhibits
Without citation to any authority and without identifying the particular exhibits, the defendant argues, in his motion to set aside the verdict, at page 6, that a sketch and overlays depicting the vehicles and their positions at or near the time of the accident were improperly allowed into evidence. (See motion to set aside the verdict, p. 6.)
These exhibits, plaintiff's exhibits 1, 3, 4, 5 and 6,[9] were authenticated at trial either by Catalano; by Officer Petro, the investigating police officer who reported to the accident scene; or by Roger Jones, the driver of the third vehicle. While not drawn to scale, these exhibits were identified as being reasonably accurate depictions of the scene. They were not prejudicial in nature. Under the circumstances, they were properly admitted. See Sitnik v. National Propane Corp.,151 Conn. 62, 67, 193 A.2d 503 (1963). CT Page 15193
 E. The Weight of The Evidence And The Size of The Verdict
In the motion for remittitur, and in the motion to set aside the verdict, the defendant contends that the verdict rendered by the jury was excessive and contrary to the evidence as a matter of law. In considering such motions, the court may not simply substitute its view of the evidence for that of the jury. The "right to have factual issues resolved by the jury. . . . embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive." (Internal quotation marks and citations omitted.) Ham v. Greene, 248 Conn. 508, 536, 729 A.2d 740, cert. denied,528 U.S. 929, 120 S.Ct. 326, 145 L.Ed.2d 254 (1999): "A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Citations omitted; internal quotation marks omitted.) Wichers v. Hatch,252 Conn. 174, 187, 745 A.2d 789 (2000).
"When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks and citations omitted.) Gaudio v.Griffin Health Services Corp., 249 Conn. 523, 554, 733 A.2d 197 (1999).
The defendant argues that the jury's verdict of $7,600.00 in economic damages and $52,400 in non-economic damages is against the evidence. First, the defendant contends that "no evidence of permanent injury was put before the jury or admitted as evidence in the trial on the plaintiff's behalf." (See motion to set aside the verdict, pp. 1, 2.) This is plainly wrong. Dr. Carrie Hartney, a chiropractor, testified at trial concerning the permanent disability rating she assigned to the plaintiff. Her report of August 16, 2000, plaintiff's exhibit 35, was admitted as a full exhibit. Page two of that report states: "[T]he remaining loss of range of motion and pain upon movement have resulted in a 5% loss to the lumbar spine. The above figure has been determined utilizing the American Medical Association guide for evaluation of disability."
Indeed, in his motion for remittitur, at page 3, the defendant CT Page 15194 acknowledges that this evidence was presented, thus contradicting his presentation in his motion to set aside the verdict. There, the defendant states that Catalano was assigned a 5% impairment to his lumbar spine by Dr. Hartney. Clearly, the jury could have considered this evidence of permanent partial disability in reaching its verdict.
Second, without citation to any legal authority, the defendant then argues in the motion to set aside the verdict that, while evidence of the fact that there was a thirty per cent (30%) chance that the plaintiff would have surgery in the future was permitted, this possibility "could not form the basis of an award for non-economic damages." (See motion to set aside the verdict, p. 1.) This is an inaccurate statement of the law on this subject. Above, in its discussion of the disclosure of expert testimony, the court has set forth the case law on which it relied in instructing the jury concerning the possibility of future surgery and the plaintiff's fear thereof as part of the jury's consideration of an award of non-economic damages. See supra at pp. 12-13.
In this case, the defendant requested no interrogatories which would have required the jury to explain the components of its non-economic damages award. Interrogatories were submitted concerning the respective negligence of Falco and Roger Jones, the driver of the third vehicle involved in the accident, and concerning the plaintiff's reckless driving claim. Question 6 of the interrogatories asked the jury to set forth its findings concerning economic ad non-economic damages, without a breakdown of their components. Likewise, the plaintiff's verdict form contained the traditional spaces for the jury's findings as to economic and non-economic damages, without breakdowns. (See interrogatories and plaintiff's verdict form, #125.)
Under Connecticut law, in these circumstances, it would be error for the court to presume how the jury reached its verdict as to non-economic damages. "Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside." Marchettiv. Ramirez, 40 Conn. App. 740, 746, 673 A.2d 567 (1996), affirmed,240 Conn. 49, 688 A.2d 1325 (1997). Here a general verdict was rendered. That, "coupled with the absence of interrogatories, [makes] it impossible for the trial court . . . to determine what factors the jury considered in making its award." Id. "We cannot speculate as to how the jury reached its figure." Caruso v. Quickie Cab Co., 48 Conn. App. 459, 462,709 A.2d 1154 (1998).
At oral argument concerning the post-verdict motions, defense counsel conceded, "[t]he plaintiff testified of his fear of future surgery and I don't know what the jury did. I suspect that finding for the Plaintiff, they must have awarded damages for that, Judge, not having been in the CT Page 15195 juror's room, I can't obviously know what, for certain, what they did." (See transcript of October 15, 2001, p. 9.) The court declines to speculate as to how the jury reached its verdict.
In addition, at oral argument, defense counsel stated, "for whatever it's worth, I can say that in my experience of practicing law for almost twenty years, $52 and a half thousand dollars in noneconomic damages for a case with seven and a half grand in medical bills and a five percent permanency, is a large award." (See transcript of October, 15, 2001, p. 17.) As noted above, under Connecticut law, each case must be viewed individually, not according to a formula.[10]
Evidence was presented to the jury which indicated that, after he was injured, Catalano was in substantial pain. He submitted over $7,000 in medical bills which he incurred. In addition, evidence wits offered to establish that his physical condition has not improved overtime. Catalano and his wife testified that, as a result of the incident, he continues to suffer discomfort in his back and that his life's activities have become restricted. For example, he stated that he could no longer engage in what, for him, had been important pre-accident activities in connection with his employment. (See transcript of August 2, 2001, pp. 150-153.)
Testimony by Dr. Hartney and her medical report, which was admitted without objection, indicated that Catalano has suffered a five per cent (5%) permanent partial disability to his back. The evidence showed also that, at the time of the trial, Catalano had a statistical life expectancy of an additional 28.9 years.
As noted, the jury also heard evidence about the possibility of surgery and Catalano's fear thereof. Whether or not this was factored into the jury's award is not known. As discussed, the court may not engage in such speculation.
The jury's verdict was for $7,600.00 in economic damages and $52,400.00 in non-economic damages. There was a sufficient evidentiary basis on which the jury could premise these monetary awards. The jury's verdict as to damages is not excessive and does not shock the court's sense of justice. The jury's finding against Falco is supported by and not against the evidence which was presented at trial. Likewise, the verdict was not contrary to law.
 CONCLUSION
For the foregoing reasons, the defendant's motions for remittitur and to set aside the verdict, are denied. It is so ordered. CT Page 15196
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT