[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, John and Hilda Livi, have brought this action against the defendant, 286 North Street Properties LLC, alleging a breach of contract and negligence.
This dispute arose out of the contract between the parties for the construction of a home and landscaping of the property known as 290 North Street in the City of Milford. At the time, title was transferred from the defendant to the plaintiffs several items were unfinished including landscaping. It was agreed at that time that the defendant would complete the placement of topsoil and the seeding of the lawn areas.
The punch list of items to be done included the following: "Yard to be seeded, including topsoil and plant foundation bushes (as weather permits)." The complaint, referring to or punch list, describes the work to be done as "the loaming, landscape and seeding of the premises."
In Count One of the plaintiffs' complaint, the plaintiff alleges a breach of contract alleging that topsoil or loam was not provided for the proper landscaping of the property; that the lawn was not properly seeded allowing for bare spots, and; that the yard was not properly graded."
Counts Two and Three of the complaint are almost identical, Count Two alleging a negligent breach of contract and Count Three alleging a breach of contract. Both counts allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA) Section 42-110a, et seq., of the Connecticut General Statutes. CT Page 7473
"In determining whether a practice violates CUTPA, we use the criteria of whether a practice offends public policy or comes within some established concept of unfairness, whether the practice is immoral, unethical, oppressive or unscrupulous or whether it causes substantial injury to consumers, competitors, or other businessmen." Mintz v.Kravis, 59 Conn. App. 704, 713 (internal citations omitted).
"Not every relationship . . . comes within the terms of CUTPA. There must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." Mintz v.Karvis, supra 715.
Count Two and Count Three, as indicated, are almost identical. In neither instance does the evidence indicate a violation of any unfair trade practice and finds no nexus between the facts presented and the violation of any unfair trade practice. The defendant alleges that he carried out the requisites set forth on the punch list and avers that the plaintiffs' problem is due to their own negligence and carelessness. Judgment on Count Two and Count Three may enter for the defendant.
As for Count One, the defendant agreed in writing to seed and place topsoil on the yard areas of the plaintiffs' property. While the language of the punch list is not explicit, it is obvious that the purpose of such activity was to create a lawn upon those areas. While one realizes that the defendant is not required to create a lawn emblematic of Augusta National Golf Course, he nevertheless is required to place sufficient materials, i.e., topsoil and seed so that with proper maintenance a grassy area would result.
In this instance, however, Mr. Perrotti, plaintiffs' expert, testified that in order for seed to germinate and grow, it required topsoil having a depth of four inches. During his examination of the premises, he removed several plugs of earth, discovering that the topsoil had only a depth of one inch. While the defendant takes issue with the plaintiffs' maintenance of the area alleging that they failed to water same, the plaintiffs' expert testified that even with watering the grass seed would not germinate with only one inch of topsoil.
The testimony of Mr. Livi's neighbor was that he did in fact water his lawn, to no avail. He himself had difficulty with his lawn, even though frequently watering the same. It became necessary for him to purchase additional topsoil to improve his lawn.
The court finds that the contract between the parties was to place topsoil and seed upon various areas of plaintiff's property. This he CT Page 7474 failed to do. An insufficient amount of topsoil was placed thereon, preventing the seed from germinating and thus creating a grassy area. The plaintiffs' exhibits also showed areas of unevenness, that hardpan was visible in several areas permitting puddles to form during rainy periods. It is obvious that these areas need to be regarded.
The court finds that the defendant has failed to perform his obligation pursuant to the terms of the contract, i.e., the punch list.
In determining the damages incurred by the plaintiffs: "There are no unbending rules as to the evidence by which [damages for breach of contract] are determined. . . . The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party." (Citations omitted). Rejouis v. GreenwichTaxi, Inc., 57 Conn. App. 778, 784 (2000).
While the defendant takes issue with the plaintiffs' expert regarding the type of lawn he proposes to install indicating that he proposes to install some type of luxurious lawn, it represents the only evidence before the court relating to the cost to correct the existing conditions. His report indicates that the cost to replace and regrade the lawn would cost $3,972.88.
Judgment may enter for the plaintiffs on the first count and damages are awarded in the amount of $3,972.88.
The Court
 By ___________________ Curran, J.